Robert A. BIEBER, Petitioner,

v.

**DEPARTMENT OF THE ARMY, Respondent.**

No. 01–3058.

United States Court of Appeals, Federal Circuit.

DECIDED: May 2, 2002.

M. Corinne Corley, Corley Law Firm, of Kansas City, MO, argued for petitioner.

Kyle Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director.

Before LOURIE, DYK, and PROST, Circuit Judges.

DYK, Circuit Judge.

Petitioner Robert Bieber appeals from the final decision of the Merit Systems Protection Board ("Board") denying review of a decision of the administrative judge sustaining Bieber's removal from service from the Department of the Army ("Army") for insubordination, disrupting the workplace, and making a false statement concerning his supervisor. The primary question in this case is whether the administrative judge's conduct during a hearing deprived Bieber of due process. Because we conclude that the administrative judge's actions did not rise to the level of a due process violation and that the Board's findings are supported by substantial evidence, we affirm.

I

Bieber was a management analyst for the Army in Fort Leavenworth, Kansas, until his removal effective July 9, 1999. Before his removal, Bieber had several confrontations with co-workers and supervisors, stemming from Bieber's concerns that his co-workers wore inappropriate casual clothing and that his supervisors failed to provide adequate guidance as to what clothing was appropriate.

On April 23, 1998, Bieber's immediate supervisor, Thomas Rezentes, orally in-

structed Bieber that it was not Bieber's responsibility to determine what other personnel should wear, and that he should stop confronting his co-workers regarding their attire. On August 4, 1998, Bieber sent an email to his second-level supervisor, Ray Lowery, seeking "definitive guidance" as to the appropriate standard of dress in the office. He wrote that "[t]wo official documents in the last 11 months have said that appropriate dress information would be available from my supervisor," and stated that if he did not receive a response from Lowery within "say 10 working days," he would, among other things, "be sure to advise each of [his] co-workers of the policy—by no decision—decision."

On August 16, 1998, Lowery responded to the email by informing Bieber that he would respond to his concerns regarding the dress code issue as time permitted, and explicitly instructed Bieber: "In the meanwhile don't (DO NOT) expend any more resources (e.g., your time, email, the time of your fellow employees, and the time of your supervisors) on this subject."

On September 7, 1998, Bieber sent another email to Lowery regarding the dress code issue, which he copied to at least twenty-two other employees, stating that he "had enough" of waiting for Lowery's response. Bieber further stated that if he did not receive a "creditable, definitive, unambiguous and usable" answer by September 14, 1998, regarding the dress code issue, he would file a union grievance against Lowery "for abrogating [his] identified responsibility to provide direction on the appropriateness of wearing certain specific items of clothing. . . ." Bieber filed a union grievance shortly thereafter.

On September 18, 1998, Lowery and Rezentes met with Bieber to discuss the union grievance. Bieber was again told that it was not his job to monitor other employees' manner of dress, and that, although Lowery personally agreed with Bieber that jeans and sneakers were inappropriate office attire, Lowery would not forbid employees from wearing them.

On September 30, 1998, Lowery suspended Bieber for five days for discourtesy, insubordination, and refusal to obey management directives based on Bieber's circulation of the September 7, 1998, email.

Bieber challenged the suspension, and an arbitration hearing was held on April 20, 1999. At the arbitration hearing, Bieber learned for the first time that Rezentes had drafted a Memorandum For Record ("MFR") dated April 23, 1998, stating that the types of clothing Bieber inquired about were "acceptable." Bieber construed this statement of policy as inconsistent with guidance he received September 29, 1998, that such clothing was "inappropriate but permitted." (Tr. at 274, ll. 25–26.)

On May 2, 1999, Bieber sent an email to Rezentes entitled "Guidance on Appropriate Dress for [Management Analysts] in the Workplace." In this email Bieber accused Rezentes of being a "liar," and repeated his demand for "guidance" as to whether employees in the office were permitted to wear "hats, and/or jeans, and/or sneakers . . . and/or tee shirts and/or open toed sandals without socks. . . ." He demanded that Rezentes respond within nine days, in writing, to head off "any possibility of future capriciousness or whimsey playing into his guidance." The email was copied to seventeen co-workers.

On May 7, 1999, and May 10, 1999, several of Bieber's co-workers wrote to Rezentes complaining of Bieber's confrontational behavior and expressing concern that he might turn violent, and asked if it was safe to come to work on May 11, 1999, the deadline set in Bieber's email. (Tr. at

16.) On June 3, 1999, Rezentes issued to Bieber a notice of proposed removal for "insubordination; failure to obey a management directive; disrupting the workplace; and making a false statement against your supervisor." On July 6, 1999, Lowery issued a written notice of his decision to remove Bieber from federal service.

Bieber filed an appeal with the Board on July 27, 1999. The case was assigned to an administrative judge, and the administrative judge conducted a hearing on November 9, 1999.

In the course of the hearing, the administrative judge denigrated Bieber's concerns (for example, stating that "I really think what people wear to work is no concern of their fellow employees," (Tr. at 277, ll. 21–22), and asking "[b]ut why ... didn't Mr. Bieber just shut up?" (Tr. at 102, ll. 21–22)), and repeatedly stated that he could not understand why Bieber "continued to be obsessed with [the dress code issue]." (Tr. at 101, ll. 16–20.) The administrative judge went so far as to state that Bieber's frequent berating of his co-workers regarding their clothing "defies civility to me." (Tr. at 279, ll. 9–16.)[1] Bieber did not file a motion to recuse the administrative judge, and complains of bias for the first time on appeal to this court from the Board's decision.

On February 10, 2000, the administrative judge issued an Initial Decision sustaining the removal, finding that Bieber willfully disobeyed his supervisors' instructions to stop confronting his co-workers and supervisors regarding their clothing; that Bieber's actions disrupted the workplace; that Bieber falsely accused his supervisor of lying; and that removal was an appropriate penalty. *Bieber v. Dep't of Army*, No. DE–0752–99–0330–I–1, 86 M.S.P.R. 688 (M.S.P.B. Sept. 13, 2000) ("*Initial Decision*").

On September 13, 2000, the Board declined to review the Initial Decision, making it the final decision of the Board. Bieber's timely petition for review followed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9).

## II

We must sustain the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

## III

■ Bieber argues that this court's decision in *Grubka v. Department of the Treasury*, 858 F.2d 1570 (Fed.Cir.1988) (per curiam), requires that we reverse because the administrative judge's conduct violated Bieber's right to due process and "a meaningful opportunity to be heard." The requirements of due process, of course, apply to administrative proceedings. *Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir.1986). In *Grubka*, we reversed the Board's decision sustaining the Internal Revenue Service's demotion of petitioner Grubka as not supported by substantial evidence. We found that the administrative judge demonstrated "undeniable bias" against Grubka by comment-

---

1. The administrative judge further stated: "I'm really groping to understand why you behaved as you did and I'm not hearing anything," (Tr. at 280, ll. 10–11); asked "[w]hat difference does it make to you what other people are wearing? What earthly difference, Mr. Bieber?" (Tr. at 280, ll. 20–21); and warned Bieber that "[y]ou're losing it." (Tr. at 307, l. 4.)

ing that "[a]fter going too far, [Grubka] was caught," meaning apparently caught engaging in misconduct. *Grubka,* 858 F.2d at 1574. We noted that "this statement ... shows undeniable bias on the part of the [administrative judge] against Grubka, and makes the [administrative judge] partisan against Grubka when he should have been neutral and nonpartisan," and that "[t]his statement tainted [the administrative judge's] decision on credibility in this [misconduct] charge, as well as in all of the other charges in this case," thereby depriving Grubka of due process. *Id.* at 1575. Rather than remanding for a new trial, however, the court simply reversed the Board and remanded with instructions to restore Grubka to his former position, because it found that there was no record evidence of impropriety to sustain the demotion. *Id.* at 1576–77.

Here some of the administrative judge's comments during the November 9, 1999, hearing might well fall within the *Grubka* standard. We do not condone the remarks of the administrative judge. While the majority of the administrative judge's actions of which appellant complains constituted routine trial management, some of the administrative judge's remarks were plainly inappropriate. Nonetheless, we conclude that the due process aspect of *Grubka,* which was dictum in any event, is no longer good law in light of the Supreme Court's subsequent decision in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), decided six years after *Grubka.*

In *Liteky,* the Supreme Court recognized that a showing of "deep-seated ...

antagonism" toward a party is necessary for a successful bias or partiality motion under the federal judicial recusal statute, 28 U.S.C. § 455 (1994), where the motion is based on the judge's conduct in the course of the proceeding:[2]

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.* Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky,* 510 U.S. at 555, 114 S.Ct. 1147 (first emphasis added).

█ To be sure, *Liteky* concerned judicial bias in the context of recusal, and here neither the federal judicial recusal statute nor the recusal statute specifically governing administrative judges, 5 U.S.C. § 556(b), applies because Bieber does not seek the administrative judge's recusal, but rather seeks a new hearing. Nonetheless, we think that the same standard, requiring a showing of "a deep-seated favoritism or antagonism that would make fair judgment impossible," must govern in both contexts. Other courts of appeals have applied *Liteky* outside of the recusal

---

**2.** Subsection (a) of that statute provides, in pertinent part, that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1994). Subsection (b) further provides, in pertinent part, that any of those judicial officers "shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party...." *Id.*

context, where a party seeks a new trial on the ground that the judge's bias in the course of the proceedings deprived that party of a fair trial. In *United States v. Donato*, 99 F.3d 426 (D.C.Cir.1996), the District of Columbia Circuit applied *Liteky* to reverse defendant's conviction and remand for a new trial where the district judge's conduct "crossed [the *Liteky*] threshold" in that the district court judge's "hostility" to defendant and her counsel "reveal[ed] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 435 (quoting *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147). The court noted that the district judge's degrading comments to defendant and near-constant criticism of her attorney "raise in us a serious doubt as to whether this defendant received a fair trial." *Id.* at 438. The court reversed defendant's conviction and reassigned the case to a different judge. *Id.* at 439.

In *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir.1997), the First Circuit applied *Liteky* in finding that plaintiff-appellant failed to establish that the judge's comments during trial deprived him of an impartial trial where plaintiff-appellant contended that the judge interjected hostile questions during his testimony, and treated defendant's testimony "solicitously." Citing *Liteky*, the court found that the judge's comments indicated "no more than that [the judge] had grave doubts [about] Logue's credibility," and that "the mere fact that the judge voices his opinion out of the presence of the jury does not irretrievably taint the trial." *Id.* at 1046. The

court further cited *Liteky* in holding that the judge's "mid-trial remarks critical of counsel are insufficient to sustain a claim of judicial bias or partiality against the client," and further stated that the judge's statements made in the jury's presence "did not compromise the fundamental fairness of the proceedings," in that a judge's routine efforts at court administration do not evince bias or partiality. *Id.* at 1046.

Although *Donato* and *Logue* involve the conduct of judges presiding over jury trials rather than bench trials, we think the same standard ought to apply regardless of whether the trier of fact is a jury or judge.

## IV

■ Here, the administrative judge's comments simply do not rise to the *Liteky* threshold of evidencing "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. The administrative judge's comments in this case were in fact less objectionable than the judge's statements and conduct in *Logue*, where the judge stated that "I totally disbelieve plaintiff in this case" and "I think he's an absolute and incorrigible liar." *Logue*, 103 F.3d at 1046. The court in *Logue* found that these comments did not violate due process under *Liteky*. Likewise, the administrative judge's comments in this case, while in some instances inappropriate, do not violate due process under *Liteky* and thus do not warrant a new hearing.[3]

3. Although section 455 does not contain a timeliness requirement, most courts have read into the statute a requirement of timeliness. *See United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir.1997) ("Absent a timeliness requirement, parties would be encouraged to withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455 in order

to get a second bite at the apple.") (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir.1992)); *see also United States v. York*, 888 F.2d 1050, 1053–55 (5th Cir.1989) (concluding that there is a timeliness requirement under both subsections of section 455, and discussing other circuits that have imposed a similar timeliness requirement). There is also no explicit timeliness

**V**

■ We also conclude that the administrative judge's findings of fact are supported by substantial evidence. Those findings rest in substantial part on credibility determinations. The credibility determinations of an administrative judge are virtually unreviewable on appeal. *Pope v. United States Postal Serv.*, 114 F.3d 1144, 1149 (Fed.Cir.1997) ("As an appellate court, we are not in [a] position to re-evaluate these credibility determinations, which are not inherently improbable or discredited by undisputed fact."); *see also Haebe v. Dep't of Justice*, 288 F.3d 1288, 1300–01 (Fed.Cir. 2002). Bieber basically requests us to re-weigh conflicting evidence; this is not our function, and the inappropriate comments of the administrative judge do not warrant our disregarding his factual findings or his credibility determinations.

■ Substantial evidence supports the Board's findings that Bieber was insubordinate. Insubordination is "a willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed." *Phillips v. Gen. Servs. Admin.*, 878 F.2d 370, 373 (Fed.Cir.1989) (emphasis omitted). Bieber was repeatedly instructed to stop distracting his co-workers and using office resources to express his displeasure with, and alleged confusion regarding, the office

dress policy. Despite these warnings, Bieber sent the May 2, 1999, email. Bieber argues that he sent the email merely to obtain clarification of "previously undisclosed documentation of management's position ... where that position [allegedly] contradicted the position previously taken by management." But the administrative judge determined that Bieber's claim that management never provided him with clarification concerning what was acceptable dress in the office wholly lacked credibility. The Board's credibility determination is neither "inherently improbable [n]or discredited by undisputed fact." *Pope*, 114 F.3d at 1149.

■ Substantial evidence also supports the Board's finding that Bieber disrupted the workplace. The record shows that Bieber's conduct toward his co-workers and superiors concerning the dress code issue severely disrupted the Maneuver Branch. It is undisputed that Bieber "was openly intolerant of, ridiculed, and abused fellow employees who wore jeans, baseball caps, and sneakers in the workplace." *Initial Decision*, at 6 n. 2. His supervisors testified that dealing with Bieber on the dress code issue consumed a tremendous amount of time and resources, and several employees testified that they were frightened by the deadline set in Bieber's May 2, 1999, email.

■ Substantial evidence supports the Board's finding that Bieber made a false

---

requirement in 5 U.S.C. § 556(b). Here we need not decide whether Bieber waived his right to object to the administrative judge's alleged bias on due process grounds (by failing to file a timely recusal motion), because we find that the administrative judge's conduct did not rise to the level of the *Liteky* standard.

Moreover, nothing we say here should be construed to deny the Board or this court the authority to order a case reassigned on remand if there is evident bias, even though it

does not satisfy the *Liteky* standard. *Gallagher v. Dep't of Air Force*, 84 M.S.P.R. 441, 443 (1999) (reassigning case on remand to a different administrative judge because "the appearance of partiality here has sufficiently tainted the proceeding below...."). In *Liteky*, the Supreme Court suggested that reviewing bodies have discretion to require reassignment upon remand even where recusal would not be required. *Liteky*, 510 U.S. at 554, 114 S.Ct. 1147.

statement regarding his supervisor. It is undisputed that Bieber accused Rezentes of lying to him about the dress code issue in his May 2, 1999, email. Bieber argues that "[t]here is no direct evidence" that he knowingly made a false accusation against Rezentes. The administrative judge weighed the credibility of both Bieber and Rezentes and found it "quite unlikely that Rezentes would have lied to the appellant about a matter as mundane as Lowery getting back to the appellant about the dress code issue." *Initial Decision,* at 12. The administrative judge concluded "I find it far more likely that, given the appellant's frustration or anger about the dress code issue, he intentionally falsely accused Rezentes of lying to him." *Id.* Again, the Board's credibility determination is neither "inherently improbable [n]or discredited by undisputed fact." *Pope,* 114 F.3d at 1149. We accordingly affirm the Board's decision sustaining the charges against Bieber.

Bieber also contends that the penalty of removal was unreasonable. However, our review of the penalty imposed by the agency is "highly deferential," *Webster v. Dep't of Army,* 911 F.2d 679, 686 (Fed.Cir.1990), *cert. denied,* 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991), and requires a showing that the penalty is "grossly disproportionate to the offense charged." *Miguel v. Dep't of Army,* 727 F.2d 1081, 1083 (Fed.Cir.1984). There was no demonstration here that Bieber's removal was grossly disproportionate to his offense.

## CONCLUSION

For the foregoing reasons, the decision of the Merit Systems Protection Board is affirmed.

## COSTS

No costs.

*AFFIRMED.*