Mark C. HAVER, Petitioner,

v.

DEPARTMENT OF AGRICULTURE,
Respondent.

No. 02–3315.

United States Court of Appeals,
Federal Circuit.

Decided Dec. 12, 2002.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and DYK, Circuit Judge.

PER CURIAM.

Mark C. Haver appeals the May 2, 2002, final order of the Merit Systems Protection Board ("Board"), denying his request for reinstatement and back pay and affirming his dismissal. *Haver v. Dep't of Agriculture*, No. DE–0752–01–0255–I–1, 91 M.S.P.R. 666 (MSPB May 2, 2002) (Final Decision). We *affirm*.

## BACKGROUND

On the morning of July 11, 2000, Mark Haver, a Range Management Specialist (a position without law enforcement responsibilities) at the Department of Agriculture's National Resource Conservation Service ("NRCS"), was on his way to a work-related meeting in San Carlos, Arizona. En route he crossed the center line of a two-lane highway in his government pickup truck and struck a car going the opposite direction with his side mirror, smashing his driver's side window and side mirror as well as the oncoming car's

side mirror. According to an eyewitness, Haver had been driving erratically and did not stop after the collision but rather was chased down by the other driver. Forty to fifty minutes later, Haver failed a sobriety test administered by a police officer. The officer found a .22 pistol in Haver's pocket, after which Haver told the officer that in the truck he also had a .357 magnum, though he did have a concealed weapons license. Haver was arrested. At the station, he registered twice Arizona's legal alcohol limit on a Breathalyzer.

On July 20, 2000, the NRCS placed some conditions on Haver's continued employment and informed him that it "plan[ned] to wait until you have completed the court process and been informed of their action, if any, before [it] ma[de] a decision on further agency action." Haver's supervisor later restricted him from driving on duty. Haver testified that he violated this restriction by driving in his own vehicle to a customer meeting on February 7, 2002. At unspecified times, Haver also took his guns to work, in derogation of agency policy.

On February 22, 2001, the NRCS proposed Haver's termination based on four misconduct charges. They were:

(1) Driving a government vehicle under the influence of alcohol.

(2) Carrying a concealed weapon in a government vehicle

(3) Having firearms in a government office on unspecified occasions.

(4) Failure to follow instructions, including driving a vehicle on government business after he had been instructed not to do so.

The agency provided Haver with an opportunity to meet with the deciding official, but he declined and sent a letter instead. On April 10, 2001, the agency's deciding

official sustained all four charges against Haver and terminated him.

Haver timely appealed to the Board. After a hearing, the administrative judge sustained all four charges and upheld Haver's termination. *Haver v. Dep't of Agriculture*, No. DE–0752–01–0255–I–1, slip op. at 2 (MSPB August 21, 2001) (Initial Decision). On the driving while intoxicated charge, the administrative judge found that Arizona's failure to prosecute Haver was not relevant because there was no indication that the decision was based on "exculpatory evidence," and he did not believe Haver's assertion that his supervisor knew that he was drunk when he ordered Haver to drive to San Carlos. (Initial Decision at 6.) On the charge of carrying a concealed weapon in a government vehicle, the administrative judge noted that Haver had admitted that he had done so. In regard to both this charge and the charge that Haver had brought his guns to the office, the administrative judge found that Haver knew that he was not permitted to bring firearms to work and found it insufficient that Haver claimed the guns were required to protect himself from "militia" members. (Initial Decision at 8–9.) On the fourth charge, failure to follow instructions, the administrative judge found that Haver had knowingly failed to follow the agency's instructions when he drove a vehicle on government business after having been restricted from doing so. (Initial Decision at 9–10.) In assessing the reasonableness of Haver's termination, the administrative judge considered Haver's "13–year Federal tenure, his good work record .. his lack of disciplinary record," his "sincere expression of contrition . . . good rehabilitative potential," the "seriousness of [his] misconduct," and the effect of this misconduct on his co-workers. (Initial Decision at 10–11.) The full Board declined review. *Haver v. Dep't of Agriculture*, No. DE–0752–01–0255–I–1, 91 M.S.P.R. 666, slip op. at 1 (MSPB May 2, 2002).

Haver timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our standard of review for decisions of the Board is limited by statute, which directs us to set aside Board decisions only if they are found to be 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule or regulation having been followed; or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Yates v. Merit Sys. Prot. Bd.*, 145 F.3d 1480, 1483 (Fed. Cir.1998). It is well established that the "credibility determinations of an administrative judge are virtually unreviewable on appeal." *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed.Cir.2002); *Pope v. United States Postal Serv.*, 114 F.3d 1144, 1149 (Fed.Cir.1997).

Haver does not challenge any of the Board's factual findings and admitted in his response to the proposed termination that "discipline is appropriate." Instead, he raises several legal arguments.

First, Haver argues that the nine-month delay between the July 11 incident and his termination violates his constitutional rights. Although in his brief he supports this point with the Sixth and Fourteenth Amendments, neither of which applies here, we will consider whether his Due Process rights under the Fifth Amendment have been violated. They have not. It is true that delay in agency action can become so prolonged as to violate Due Process. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, as the Supreme Court has held, a "9–month

adjudication is not, of course, unconstitutionally lengthy *per se."* *Id.* Rather, there must be some demonstration that the process was "unreasonably prolonged." *Id.* In this case the agency explained, and Haver does not deny, that it delayed action for nine months pending resolution of the criminal proceedings connected with the July 11 incident. This was reasonable.

■ Second, Haver argues that the charge of bringing a firearm into work cannot be sustained because there were no notices at the front and rear exits of the office where he worked. He derives this requirement from a federal criminal prohibition on possessing a firearm in a federal facility, which requires proof of such posting or actual notice of the prohibition. 18 U.S.C. § 930 (2000). The government need not demonstrate that Haver violated a criminal law in order to discipline him. In any event, the administrative judge found that Haver had actual knowledge of the agency's ban. (Initial Decision at 9.) Thus, he had sufficient notice that the conduct was prohibited.

■ Third, Haver objects to the administrative judge's decision to exclude the testimony of some of his witnesses. The administrative judge's decision was not error. One witness was to testify about another employee who had brought a firearm to the office. The transcript of the proceedings makes clear that the administrative judge believed the testimony to be duplicative of earlier testimony about the same incident. Another witness would have testified, according to Haver, that San Carlos was a remote location and thus Haver had greater fear of armed militiamen, which is hardly a crucial point. (Appellant's Br. at 6.) This court has held that a "determination whether the testimony of witnesses should be presented is within the sound discretion of the [administrative judge]." *Davis v. Office of Personnel Management,* 918 F.2d 944, 946 (Fed.Cir. 1990). Here, the decision to exclude the testimony was not an abuse of discretion.

■ Fourth, Haver claims that the administrative judge did not consider alternative sanctions. This is not correct. The administrative judge considered Haver's "good rehabilitative potential" but held that "the seriousness of [his] misconduct far outweighs the mitigating factors that are present." (Initial Decision at 11.)

■ Finally, Haver alleges that employees who committed similar infractions were dealt with less harshly. In order to prevail, Haver must establish that the other employees who were treated differently were similarly situated. *See Baker v. Dep't of Health & Human Serv.,* 912 F.2d 1448, 1458 (Fed.Cir.1990). He did not establish this to the administrative judge's satisfaction, and he has presented nothing to this court to indicate that the administrative judge's decision was unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we affirm.

## COSTS

No costs.