# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

MUHAMAD SADIQ,
      Appellant,

v.

DEPARTMENT OF VETERANS
   AFFAIRS,
      Agency.

DOCKET NUMBER
CB-7121-12-0004-V-1

DATE: March 13, 2015

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Eleanor J. Lauderdale, Esquire, Washington, D.C., for the appellant.

Jack P. Di Teodoro, Esquire, Brooklyn, New York, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      Pursuant to the Board's instructions, the administrative judge issued a September 18, 2014 recommendation on the appellant's discrimination and disparate penalty claims. For the reasons set forth below, we adopt the administrative judge's findings and deny the request for arbitration review.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2       The pertinent background for this case is set forth in the Board's Opinion and Order forwarding this matter to the regional office for an addendum proceeding on the issues of discrimination based on religion and disparate penalty raised in the appellant's request for arbitration review. *Sadiq v. Department of Veterans Affairs*, [119 M.S.P.R. 450](#) (2013).

## BACKGROUND AND ANALYSIS

¶3       The agency removed the appellant from his position as a Staff Pharmacist at the agency's Lyons campus for making seven errors verifying physicians' medication orders between March 5, 2009, and May 18, 2009. *Id.*, ¶ 2. In deciding to remove the appellant, the agency considered his prior discipline for committing medication errors, which resulted in a 5-day suspension in 2008, and a 14-day suspension in 2009.[2] *Id.* On behalf of the appellant, the union challenged the removal action pursuant to the negotiated grievance procedure through arbitration. *Id.*

¶4       The Board deferred to the arbitrator's finding that the agency did not violate the collective bargaining agreement when it removed the appellant pursuant to chapter 75 for the proven misconduct. *Id.*, ¶¶ 8-9. However, the Board vacated the arbitrator's decision as to the penalty because the arbitrator failed to cite an analytical framework for adjudicating the appellant's claims of discrimination or disparate penalty or make any findings on these issues. *Id.*, ¶ 12. For this reason, the Board forwarded the case to the regional office for the administrative judge to

[2] In the notice of proposed removal, the agency stated that the appellant's first suspension was for 5 days from November 30, 2008, through December 4, 2008, for making six medication errors between May 27, 2008, and July 14, 2008; and the appellant's second suspension was for 14 days in May of 2009, for making five additional medication errors between October 18, 2008, and January 24, 2009. MSPB Docket No. CB-7121-12-0004-V-1, Request for Arbitration Review (RAR) File, Tab 10 at 71. Both suspensions were upheld in arbitration. *Sadiq v. Department of Veterans Affairs*, MSPB Docket No. CB-7121-12-0004-H-1 (H-1 File), Tab 23 at 52.

make recommended findings on those issues under the appropriate legal standards. *Id*., ¶¶ 12-13.

¶5     After holding a hearing and considering the parties' submissions, the administrative judge recommended that the Board deny the appellant's request for review based on his finding that the appellant failed to prove discrimination or disparate penalty.  H-1 File, Tab 34, Recommended Decision (RD) at 6-7, 9,11.  The administrative judge found that there was no evidence of discriminatory animus and the appellant failed to meet his burden of proving religious discrimination by a preponderance of the evidence.  RD at 6-7.  The administrative judge also found that the appellant failed to prove that he received a disparate penalty, in part, because the comparators he identified all had one to four errors, which paled in comparison to the 17 errors he made in less than 1 calendar year.  RD at 7.  The administrative judge noted that the appellant's representative attempted to add a new claim alleging that the agency's record keeping regarding discipline was so bad that the agency could never properly apply *Douglas* factor 6.[3]  RD at 9.  The administrative judge found that this claim should be excluded from consideration because he was not persuaded that the appellant based his claim on new information, and he failed to raise this claim at the prehearing conference or in objections to the prehearing conference summary. *Id*.

¶6     The appellant filed exceptions to the recommended decision.  RAR File, Tab 19.  In his exceptions, the appellant argues that the administrative judge was biased and that he proved his claims of religious discrimination and disparate penalty. *Id*.  The agency did not respond to the appellant's exceptions. *Id*.

¶7     In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R.

---

[3] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

382, 386 (1980). A party's bare allegation of bias or improper conduct by an administrative judge is insufficient to overcome this presumption. *Nettles v. Department of the Army*, 52 M.S.P.R. 181, 184 (1991). Administrative judges have broad discretion to control proceedings before them, including the discretion to exclude proffered witness testimony that is irrelevant or repetitive. *Butler v. Department of the Air Force*, 73 M.S.P.R. 313, 317 (1997).

¶8 The appellant argues that the administrative judge was biased because he informed the agency of his doubts about the appellant's discrimination claim and he encouraged the parties to settle during the prehearing conference. RAR, Tab 19 at 4-5. However, as a matter of policy, the Board favors settlement of appeals and administrative judges may encourage settlement and make honest appraisals of the likelihood of the success of an appeal if the parties elect to pursue adjudication. *Nettles*, 52 M.S.P.R. at 185. As further evidence of bias, the appellant states that the administrative judge's demeanor during the hearing was "abysmal"; he consistently sustained the agency's objections; he excluded testimony from the union steward; and he refused to recuse himself from this case. RAR, Tab 19 at 4-5, 8. An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We find that the appellant's allegations of bias do not meet this standard.[4]

¶9 In his exceptions, the appellant also argues that the administrative judge "failed to properly characterize" his affirmative defense of religious

---

[4] The appellant's representative also states that, because of the administrative judge's negative attitude, he did not have the appellant testify at the hearing. RAR File, Tab 19 at 5. As explained above, we find that the appellant failed to prove his claim of bias. We further find that the appellant had the right not to testify and, in exercising that right, he has shown no error in the actions of the administrative judge.

discrimination.  RAR File, Tab 19 at 7.  He contends that the administrative judge oversimplified his discrimination claim by focusing only on his desire to take Fridays off from work to observe the Islamic day of prayer and an incident involving a request to move his prayer rug and failed to consider the "broader picture of discrimination."  *Id*. at 7.  He argues that the administrative judge failed to consider that the agency subjected him to heighted scrutiny because of his religion and penalized him for his medication order errors "more harshly than his similarly situated colleagues."  *Id*. at 7-8.  For the reasons explained below, we conclude that the administrative judge properly considered and rejected the appellant's affirmative defense under the relevant legal framework.

¶10        To establish a prima facie case of prohibited employment discrimination based on disparate treatment, an appellant must show that he:  (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶ 40 (2010). Where, as here, the agency already has articulated a nondiscriminatory reason for its action, i.e., the charged misconduct, it has done everything that would be required of it if the appellant had made out a prima facie case, and whether he in fact did so is no longer relevant.  *Id*.  Thus, the inquiry proceeds directly to the ultimate question of whether, upon weighing all of the evidence, the appellant has met his overall burden of proving illegal discrimination.  *Id*.  The question to be resolved is whether the appellant produced sufficient evidence to show that the agency's proffered basis for removing him was not the actual reason for its action and that the agency intentionally discriminated against him based on his religious beliefs. *Gregory*, 114 M.S.P.R. 607, ¶ 41.

¶11        The relevant evidence to be considered may include, among other things, proof that the agency treated similarly-situated employees differently than the appellant.  *Id*.  For employees to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant

aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employees. *See* RD at 3; *see also* RAR File, Tab 24 at 2; *Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014). Therefore, the comparators must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *See id.*

¶12 The administrative judge found that the agency made a reasonable offer to accommodate the appellant's religious needs and arranged to give him almost every Friday off, which the appellant does not dispute in his exceptions. RD at 6. The administrative judge also found that the deciding official credibly testified that he did not consider the appellant's religion in making his decision to remove the appellant. RD at 6-7. The administrative judge further found, among other things, that the appellant's own witness testified that his belief that management was "gunning" for the appellant was based on speculation. RD at 7. The administrative judge noted that the appellant's witness did not suggest that discriminatory animus was the reason that management took action against the appellant. *Id.*

¶13 The Board must defer to an administrative judge's credibility determinations when, as here, they are based explicitly or implicitly on the observation of the demeanor of witnesses testifying at a hearing. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so; here the appellant's arguments merely disagree with the administrative judge's demeanor-based findings and do not meet this standard. *See id.*

¶14 In his request for arbitration review, the appellant does not dispute that the charged conduct actually occurred, and he offers no new evidence of discriminatory animus in his exceptions to the recommended decision. *See Sadiq*, 119 M.S.P.R. 450, ¶ 2, n.2. The appellant also failed to identify any similarly-situated employees who received more favorable treatment—that is, any

other pharmacist not removed by the agency for making multiple pharmaceutical errors, after being suspended twice for committing the same misconduct in the same calendar year. *See Adams v. Department of Labor*, 112 M.S.P.R. 288, ¶ 13 (2009) (rejecting discrimination defense where employee did not dispute that the violations occurred and failed to identify similarly-situated comparator employees); *see also Hooper*, 120 M.S.P.R. 658, ¶ 6 (to prove an affirmative defense of disparate treatment based on discrimination, all relevant aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employees). We therefore find that the appellant did not meet his burden of proving religious discrimination based on disparate treatment. ID at 7.

¶15        In his exceptions, the appellant also challenged the administrative judge's penalty determination, claiming that he failed to perform a proper *Douglas* factor analysis.[5] RAR, Tab 19 at 9. Where, as here, the agency's charge is sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *See Adam v. U.S. Postal Service*, 96 M.S.P.R. 492, ¶ 5 (2004), *aff'd*, 137 F. App'x 352 (Fed. Cir. 2005). In doing so, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility but to ensure that managerial judgment has been properly exercised. *Id.*, ¶ 5. The Board will modify a penalty only when it finds

---

[5] We disagree with the appellant's argument that the administrative judge's penalty analysis was flawed because he attempted to bifurcate the showing of discrimination from the penalty issue. RAR File, Tab 19 at 7. The standard for determining whether employees are similarly situated for purposes of a discrimination claim differs from the standard for determining whether they are similarly situated for purposes of a disparate penalty analysis. *See Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 n.5 (2010) (noting that the Board's standard for disparate penalties does not modify precedent concerning the determination of whether employees are similarly situated under Title VII discrimination law).

that the agency failed to weigh the relevant factors or that it clearly exceeded the bounds of reasonableness in determining the penalty. *Id.* It is not the Board's role to decide what penalty it would impose but, rather, to determine whether the penalty selected by the agency exceeds the maximum reasonable penalty. *Id.*, ¶ 7.

¶16 The decision notice and hearing testimony of the deciding official, as summarized in the initial decision, show that he properly considered the relevant *Douglas* factors in sustaining the appellant's removal.[6] RAR, Tab 10, Exhibit 7; RD at 8; Hearing Compact Disk (CD) (testimony of deciding official). The deciding official testified that he always considers the *Douglas* factors, and he concluded that removal was the appropriate penalty for the appellant based on his prior discipline, the "extraordinarily high number of errors," and his lack of remorse for making those errors. Hearing CD (testimony of deciding official). The deciding official also testified that he considered whether to impose a lesser penalty but found that removal was reasonable under the circumstances because the appellant showed no concern about making the errors. *Id.*

¶17 In his exceptions, the appellant also argues that the administrative judge focused solely on the number of errors he made and "sanctioned" the agency's failure to "perform an in-depth analysis of the errors considered by other pharmacists." RAR, Tab 19 at 7-8, 11. In support of his argument, the appellant argues that the proposing and deciding officials did not consider any comparator employees and admitted that they failed to apply *Douglas* factor 6, which concerns the consistency of the penalty with that imposed on other employees for the same or similar offenses. *See Douglas*, 5 M.S.P.R. at 305-06. Our review of the hearing testimony does not support the appellant's claim. Hearing CD (testimony of the proposing and deciding officials). Although the deciding

---

[6] In the decision letter, the deciding official stated that he considered the appellant's length of service, his past work record, the seriousness of the charged offenses, his past disciplinary history as cited in the notice of proposed removal, and whether there were any extenuating circumstances that would justify mitigation. RAR, Tab 10, Exhibit 7 at 1.

official testified that he could not recall whether he considered any comparators, he further testified that he always applies the *Douglas* factors. Hearing CD (testimony of deciding official). He also testified that he has spent over 21 years as a Veterans Affairs Medical Director, and has seen hundreds of cases, but he had never seen a case involving an employee who made as many errors as the appellant. Hearing CD (testimony of deciding official).

¶18    To establish disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other factors, such as whether the appellant and the comparator were in the same work unit, had the same supervisor and/or deciding official, and whether the events occurred relatively close in time, to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. RAR, Tab 24 at 2; *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012); *Lewis*, 113 M.S.P.R. 657, ¶ 15. If an appellant makes this showing, the agency then must prove a legitimate reason for the difference in treatment. *Boucher*, 118 M.S.P.R. 640, ¶ 20.

¶19    The administrative judge considered the evidence, including the witness testimony, and discerned no basis for finding that the appellant received a disparate penalty. RD at 7-10. In his exceptions, the appellant argues that other pharmacists, including his supervisor, were counseled and not removed "regardless of the egregiousness of their errors," some of which reached the patients and caused harm, unlike the appellant's errors. RAR, Tab 19 at 9. However, the appellant submits no new evidence or argument proving that any of his alleged comparators committed similar misconduct, consisting of multiple medication errors, relatively close in time to the appellant's misconduct, and had a history of prior discipline like his.[7] *See id.* at 9-11.

---

[7] The first comparator, J.K., received no discipline for making one error during his probationary period in 2001. Hearing CD (testimony of J.K.). As the result of J.K.'s error, a patient in a clinical study required hospitalization and treatment for having a

¶20    We find that the appellant has not shown that there is enough similarity between both the nature of the conduct and other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently.    Recognizing that the Board must accord proper deference to the agency's primary discretion in managing its workforce, we see no reason to disturb the administrative judge's finding that the appellant failed to prove his claim of disparate penalties.    *See Douglas*, 5 M.S.P.R. at 306.    Although the appellant argues that the administrative judge's findings of fact are not supported by the record, he ignored certain facts and testimony, and he misapplied the applicable law, we find the appellant's arguments are not persuasive.[8]    RAR, Tab 19 at 6, 8-9, 11.  We therefore adopt the recommended decision.

---

serious reaction to receiving an incorrect amount of an experimental medication.  RAR File, Tab 23 at 24, Tab 24 at 6, 21; Hearing CD (testimony of J.K.).  Contrary to the appellant's claim that J.K.'s error caused the patient's death, the record includes a July 23, 2001 email from a physician stating that that patient was "doing well," after he was treated for the effects of the medication error and discharged from the hospital. RAR File, Tab 19 at 10, n.6, Tab 24 at 6, 12.  J.K. testified that his error did not cause the patient's death; he worked at a different facility than the appellant; he did not work for the appellant's supervisor; and he had no prior discipline.  Hearing CD (testimony of J.K.).  The second alleged comparator, E.S., worked for the appellant's supervisor and she retired during the supervisor's investigation into the medication errors she made in 2010.  H-1 File, Tab 23 at 28, Tab 24 at 12-13; Hearing CD (testimony of the appellant's supervisor).  The third alleged comparator, M.A., was verbally counselled in 2009, by the appellant's supervisor for making a medication error that did not reach a patient.  H-1 File, Tab 23 at 29; Hearing CD (testimony of M.A.).   The fourth alleged comparator, the appellant's supervisor, testified in pertinent part that the appellant accused him of making several errors in 2009; the alleged errors were investigated; and he received counselling for the one error that was found.  Hearing CD (testimony of the appellant's supervisor).  The fifth comparator, E.W., testified that he made at least a dozen errors during his 22 years as a pharmacist, and he was not penalized.  Hearing CD (testimony of E.W.).  However, E.W. did not explain the nature of his errors or state when they occurred.   Thus, the appellant's argument that all of the comparators' pharmaceutical errors "were ingested by the patients; and ill-effects followed" is not supported by the record.  RAR, Tab 19 at 9.

[8]  Although the appellant also challenged the administrative judge's finding that calculating the error rates of pharmacists would be of limited value, the disputed finding is mere dicta related to a record keeping issue not properly before the Board. RAR File, Tab 19 at 8; RD at 9-10.

¶21    Because the appellant failed to prove his affirmative defense of discrimination based on his religion and his claim of disparate penalty, we deny his request for review of the arbitrator's decision affirming the agency's removal action.

¶22    This is the final decision of the Merit Systems Protection Board on the appellant's request for arbitration review. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

<u>Discrimination Claims:  Administrative Review</u>

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no

later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.