NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FERNANDO SANTOS,**
*Petitioner*

**v.**

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,**
*Respondent*

---

2022-1808

---

Petition for review of the Merit Systems Protection Board in No. AT-0432-19-0074-M-1.

---

Decided: July 30, 2024

---

CHRISTOPHER HUGH BONK, Gilbert Employment Law, P.C., Silver Spring, MD, argued for petitioner. Also represented by KEVIN OWEN, JAMES WILSON RICHARD, II.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

---

Before DYK, CUNNINGHAM, *Circuit Judges*, and
BENCIVENGO, *District Judge*[1].

CUNNINGHAM, *Circuit Judge*.

Mr. Fernando Santos petitions for review of a Merit Systems Protection Board decision affirming the National Aeronautics and Space Administration's ("NASA") decision to remove Mr. Santos from his position as Mechanical Engineer, GS-0830-13. *Santos v. NASA*, No. AT-0432-19-0074-M-1, 2022 WL 509262 (M.S.P.B. Feb. 17, 2022) ("*Decision*") (J.A. 40–77[2]). The Board's decision followed a 2021 Federal Circuit decision*, Santos v. NASA*, 990 F.3d 1355 (Fed. Cir. 2021), that vacated an earlier Board decision, *Santos v. NASA*, No. AT-0432-19-0074-I-1, 2019 WL 2176543 (M.S.P.B. May 21, 2019) (J.A. 1–39), and remanded for further proceedings. For the reasons below, we *affirm*.

## I.  BACKGROUND

Mr. Santos became a NASA employee in 2000. *Decision* at 2; *see also* J.A. 1654. In April 2017, he joined the newly formed Ground Systems Branch in the Commercial Systems Division of the Engineering Directorate as a Mechanical Engineer. *Decision* at 2–3; J.A. 2.[3] Ms. Angela M. Balles, Chief of the Ground Systems Branch, was his first-line supervisor in this role. *Decision* at 3; J.A. 1017.

---

[1]    Honorable Cathy Ann Bencivengo, District Judge, United States District Court for the Southern District of California, sitting by designation.

[2]    Because the reported version of the Board's decision is not paginated, citations in this opinion are to the version of the Board's decision included in the Joint Appendix. For example, *Decision* at 1 is found at Joint Appendix 40.

[3]    The decision on review adopts background facts from the earlier Board decision involving Mr. Santos, and we cite to this earlier decision as appropriate.

Throughout Mr. Santos's time with NASA, he also was an Engineering Duty Officer in the U.S. Navy Reserve. J.A. 2; J.A. 217. From April 2017 through July 2018, Mr. Santos took several periods of military leave. *Decision* at 22–23; J.A. 594.

During the period relevant to our review, Mr. Santos was first assigned to work with Ms. Michele Veneri on a "certification" involving a risk-based engineering assessment for certain ground systems. *Decision* at 3–4; J.A. 1420. In October 2017, Mr. Santos was assigned to be the technical lead for Hazard Report CCTS-30.0 working with Mr. Michael Haddock, a System Manager in the Ground Systems Branch. *Decision* at 4–6; J.A. 545; S. App'x 1, Tab 45, Part 8 at 2:43–2:53.

During Mr. Santos's time in the Ground Systems Branch, Ms. Balles met with him several times concerning his job performance. In an October 2017 "mid-term progress review," Ms. Balles shared concerns from Ms. Veneri about his "lack of engagement and work product" on the certification project. *Decision* at 7; J.A. 326; J.A. 1528–29. In January 2018, Ms. "Balles met with [Mr. Santos] to discuss his work product concerning the CCTS-30.0," and communicated that "he was not meeting expectations." *Decision* at 10; J.A. 899. They also agreed that his work schedule would be a standard "tour of duty . . . from 9:00 a.m. to 5:30 p.m., with a half hour 'band of flexibility' until 9:30 a.m. if needed." *Decision* at 10; J.A. 899. In February 2018, Ms. Balles issued Mr. Santos "a Letter of Instruction that contained explicit instructions concerning his work schedule and use of leave" to address issues with his time, attendance, and performance. *Decision* at 14; J.A. 644–47. On May 2, 2018, Ms. Balles issued Mr. Santos a Letter of Reprimand "stat[ing] that since October 24, 2017, [Mr. Santos] had repeatedly failed to timely complete mandatory training requirements, resulting in Balles having to send him multiple written instructions." *Decision* at 18; J.A. 695–96.

On May 31, 2018, Ms. Balles placed Mr. Santos on a Performance Improvement Plan ("PIP"). *Decision* at 18; J.A. 270–75. Following the PIP period, "Ms. Balles determined that [Mr. Santos] had not raised his performance to an acceptable level, and on August 27, 2018, proposed his removal based on a charge of unacceptable performance." J.A. 4; J.A. 126–51. After Mr. Santos responded, effective September 26, 2018, the agency issued its decision sustaining Mr. Santos's proposed removal "[i]n accordance with the provisions of 5 U.S. Code Chapter 43 and Title 5 Code of Federal Regulations Part 432." J.A. 120–24; J.A. 4.

Mr. Santos appealed to the Board. J.A. 4. In May 2019, the Board issued its initial decision affirming the agency's decision to remove Mr. Santos. J.A. 1. Relevant to this petition for review, the Board rejected Mr. Santos's claim that his removal violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), which "prohibits discrimination in employment on the basis of military service." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001); *see also* 38 U.S.C. § 4311. The Board found that Mr. Santos "failed to show that his uniformed service was a substantial or motivating factor in his removal." J.A. 24. Mr. Santos petitioned for review of the Board's decision by this court. *Santos*, 990 F.3d at 1358.

In our 2021 decision, we vacated the Board's decision, holding that the Board "did not adequately analyze his USERRA claim." *Id.* We explained that "[t]he events leading to Santos's PIP may be directly relevant to Santos's ability to satisfy his initial burden under USERRA." *Id.* at 1364. We also held that in its analysis of the USERRA claims, "the Board must apply the *Sheehan* factors to all the facts concerning Santos's performance and Balles's supervision of Santos, both pre- and post-PIP." *Id.* We remanded for further proceedings consistent with our 2021 decision. *Id.*

On remand, the Board[4] found that Mr. Santos "failed to prove his uniformed service was a substantial or motivating factor in the agency's actions." *Decision* at 30. The Board applied the *Sheehan* factors, finding that only one of the factors—proximity in time between military service and agency actions—weighed in his favor, while the others supported the agency. *Id.* at 25–30. The Board affirmed the agency's action removing him. *Id.* at 30.

Mr. Santos timely petitioned for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. STANDARD OF REVIEW

We set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Standley v. Dep't of Energy*, 26 F.4th 937, 942 (Fed. Cir. 2022), *cert. denied*, 142 S. Ct. 2873 (2022). "Underlying factual determinations are reviewed for substantial evidence." *McMillan v. Dep't of Just.*, 812 F.3d 1364, 1371 (Fed. Cir. 2016) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

## III. DISCUSSION

Before this court, Mr. Santos argues the Board erred in its USERRA analysis. First, he asserts that he "presented sufficient evidence to establish a *prima facie* case of discriminatory motive based on the temporal proximity of Mr. Santos' military activity and the Agency's adverse employment actions." Pet'r's Br. 22. Next, he contends that there were inconsistencies between the agency's reasons for its

---

[4]   As of March 24, 2022, the initial decision of the administrative judge became the final decision of the Board. *Decision* at 30.

adverse actions against Mr. Santos. Pet'r's Br. 36; Pet'r's Reply Br. 4. Finally, he argues that the Board erred by failing to properly consider evidence and testimony of Ms. Balles's and Mr. Haddock's frustration, resentment and hostility regarding Mr. Santos's absences and leave. Pet'r's Br. 28–29, 31. As we explain below, we reject Mr. Santos's arguments, and we hold that the Board's decision was supported by substantial evidence.

"[A]n employee making a USERRA claim of discrimination . . . bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action."[5] *Sheehan*, 240 F.3d at 1013. In *Sheehan*, we explained:

> [d]iscriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including [(1)] proximity in time between the employee's military activity and the adverse employment action, [(2)] inconsistencies between the proffered reason and other actions of the employer, [(3)] an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and [(4)] disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* at 1014.

As to factor one, the Board found that "the proximity in time between [Mr. Santos's] military service and some of the agency's actions in 2018 weigh in favor of the

---

[5]   "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan*, 240 F.3d at 1013.

appellant." *Decision* at 25. The Board noted that Ms. Balles communicated concerns regarding Mr. Santos's performance in January 2018, shortly before he took military leave. *Id.*; J.A. 899. It also considered the fact that Ms. Balles issued the February Letter of Instruction and May Letter of Reprimand shortly after he returned from military leave. *Decision* at 25–26; J.A. 644. The Board's determination that this factor weighed in favor of Mr. Santos was supported by substantial evidence.

Mr. Santos asserts that the evidence of temporal proximity alone was sufficient "to establish a *prima facie* case of discriminatory motive" in Mr. Santos's removal. Pet'r's Br. 22. But the Board considered this evidence, along with evidence concerning the other factors and found that Mr. Santos failed to meet his burden. Even if a factfinder could have found evidence of temporal proximity sufficient to meet his burden, "[i]t is not for this court to reweigh the evidence before the Board." *McMillan*, 812 F.3d at 1371 (internal quotation marks and citation omitted).

The Board found that "the second *Sheehan* factor, inconsistencies between the proffered reason and other actions of the employer, favored the agency." *Decision* at 26. It held that "[t]he agency's proffered reasons for its actions, i.e., the Letter of Instructions, the Letter of Reprimand, the PIP, and ultimately the removal, are consistent." *Id.* Mr. Santos asserts that there were "myriad inconsistencies between the [a]gency's proffered reasons for its actions" and the employment actions ultimately taken by the agency. Pet'r's Br. 36. We disagree.

Mr. Santos first challenges the Board's analysis of the February 2018 Letter of Instruction and decision to place Mr. Santos on a regular work schedule beginning in January 2018. Pet'r's Br. 36–38. But Mr. Santos bears the burden of establishing that the agency acted inconsistently with its stated rationale, *see Sheehan*, 240 F.3d at 1013, and he fails to do so. The crux of his complaint is that the agency never provided evidence "of a valid, non-discriminatory reason" for altering his work schedule in either

January or February 2018.  Pet'r's Br. 38.  Mr. Santos argues the Board erred in accepting the agency's explanation for issuing the Letter of Instruction—that he often arrived late to work—because he was on a flexible work schedule without any set hours.  Pet'r's Br. 37; *Decision* at 26.  However, Mr. Santos had been placed on a regular schedule prior to the issuance of the Letter of Instruction, J.A. 899, and he provides no evidence disputing that he failed to abide by this schedule.  *See Decision* at 26 (noting Mr. Santos "did not dispute that he often arrived late").  The Board's conclusion was supported by the record.

He next challenges the Letter of Reprimand, which the Board found "was issued because he failed to [complete mandatory trainings] on time or without being reminded." *Decision* at 26; J.A. 695–96; *see also* Pet'r's Br. 38–39.  He generally asserts that "the [a]gency failed to provide a legitimate reason" for its action.  Pet'r's Br. 38.  He also argues that the Board "failed to address why Ms. Balles issued the [Letter of Reprimand] in May 2018 for matters that apparently occurred in October 2017."  *Id.* (citing *Decision* at 26).  As an example, the Board discussed the October 2017 training for which Ms. "Balles had to remind him three times" to "complete the ethics training on time." *Decision* at 26 (citing Initial Appeal File, Tab 34 at 14–15). Moreover, the May 2018 letter discussed several different trainings, J.A. 695, and there is additional record evidence concerning trainings being late.  *See, e.g.*, J.A. 334 (noting Mr. Santos's "travel card training [was] overdue by 6 days" on January 19, 2018).  We disagree that Mr. Santos's challenges to the Letter of Reprimand support a basis for reversal.

Finally, Mr. Santos challenges the agency's rationale for placing him on the PIP and ultimately removing him. He argues that he "provided numerous instances of his satisfactory performance during the relevant rating period, in contrast to the inability of [a]gency witnesses to articulate any specifics about [his] alleged deficiencies."  Pet'r's Reply Br. 5.  We are not convinced the Board erred.  The Board

discussed specific feedback from Ms. Veneri, Mr. Haddock, and Ms. Balles, noting that "all of the agency's witnesses testified concerning the lack of quality in [Mr. Santos's] work product as early as the summer of 2017." *Decision* at 27; *see also* J.A. 1422–23 (testimony from Ms. Veneri); J.A. 1487 (testimony from Mr. Haddock); J.A. 1528–29, 1549–51, 1570–71 (testimony from Ms. Balles). It also cited Ms. Balles's determination that "he did not raise his performance to an acceptable level" during the PIP. *Decision* at 27; J.A. 126–51 (notice of proposed removal discussing Mr. Santos's continued underperformance). Additionally, the Board specifically found Mr. Santos's "assertion that his performance prior to the PIP was successful [to be] unpersuasive." *Decision* at 20. Here too, it is not our role to "reweigh conflicting evidence." *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). Accordingly, Mr. Santos fails to identify reversible error.

The Board found that the "third factor, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, also weighs in the agency's favor." *Decision* at 27. Substantial evidence also supports the Board's conclusion regarding this factor. For example, the Board noted that Mr. Santos "admitted that Balles never denied his requests for military leave or overtly push[ed] back." *Id.* It also noted that in a May 2018 email, Ms. Balles told Mr. Santos she was "fully supportive of any leave taken for military orders and there is no negative impact to [his] NASA job or performance as a result of being out on approved military orders." J.A. 362; *Decision* at 29 (citing *id.*).

Mr. Santos argues the Board failed to properly assess "direct evidence of animus toward Mr. Santos's military obligations," citing testimony from Ms. Balles and Mr. Haddock. Pet'r's Br. 28–29. As evidence of Ms. Balles's alleged hostility, Mr. Santos cites Mr. Haddock's testimony that Ms. Balles had "questions over the frequency" of Mr. Santos's military leave "from a government worker standpoint," and whether he "was taking more military leave

than he could officially take." S. App'x 1, Tab 45, Part 9 at 37:20–38:24; Pet'r's Br. 29 n.12 (citing *id.*). As evidence of Mr. Haddock's alleged hostility, Mr. Santos cites Ms. Balles's testimony that Mr. Haddock was frustrated because "Mr. Santos had a pattern of . . . going on leave . . . and not passing the ball off to somebody . . . or not reengaging when he came back from [approved leave]." S. App'x 1, Tab 45, Part 1 at 47:40–48:08; Pet'r's Br. 29 n.10 (citing *id.*). Moreover, Mr. Santos cites Mr. Haddock's testimony that he was concerned about how Mr. Santos's leave would impact certain work assignments, S. App'x 1, Tab 45, Part 8 at 16:45–17:16; Pet'r's Br. 29 n.11 (citing *id.*), and expressed skepticism regarding his use of military leave based on its timing, S. App'x 1, Tab 45, Part 8 at 19:00–20:02; Pet'r's Br. 29 n.13 (citing *id.*).

The evidence Mr. Santos cites fails to persuade us that the Board's determinations concerning hostility and discriminatory animus were unsupported. Questioning whether all of Mr. Santos's military leave was authorized is not an expression of hostility towards authorized military leave. Neither is expressing frustration about Mr. Santos's failure to hand off assignments before taking leave or to reengage upon return. We do not discern other evidence of hostility, nor are these comments "evidence of an employer's general atmosphere of discrimination." Pet'r's Br. 29; *see also, e.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 414 (2011) (describing evidence of hostility where military obligations were described as "a bunch of smoking and joking and a waste of taxpayers' money") (cleaned up). Accordingly, these comments fail to persuade us that the Board's findings were unsupported by substantial evidence.

We are also unpersuaded that the Board erred by ignoring evidence. The Board's "failure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017). In addition to testimony from Mr. Santos, the Board

extensively discussed testimony from Ms. Balles and Mr. Haddock. *See, e.g.*, *Decision* at 2–20, 27–28. It also discussed and made findings concerning each of the *Sheehan* factors. *See id.* at 25–30.

Turning to the fourth and final factor, the Board found "no evidence showing the agency treated employees whose performance was also unacceptable but who did not perform military duty differently." *Id.* at 29. Mr. Santos raises no arguments before us concerning this factor, nor do we discern any evidence that casts doubt on this conclusion.

"After considering the *Sheehan* factors individually and collectively," the Board concluded that Mr. Santos "failed to prove his uniformed service was a substantial or motivating factor in the agency's actions." *Id.* at 30. We agree that the record provides substantial evidence to support this conclusion.

## IV. Conclusion

We have considered Mr. Santos's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's final decision.

### AFFIRMED

### Costs

No costs.