# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KELLY M. BATES,
          Appellant,

          v.

DEPARTMENT OF DEFENSE,
          Agency.

DOCKET NUMBER
DE-0752-13-0481-I-1

DATE: September 22, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Kelly M. Bates, Littleton, Colorado, pro se.

Dorothy Campbell, Fort Meade, Maryland, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1    The appellant has filed a petition for review of the initial decision, which affirmed his furlough. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, *infra* ¶¶ 14-16, to address the appellant's argument regarding the alleged preferential treatment of similarly situated employees, we AFFIRM the initial decision.

## BACKGROUND

¶2    The appellant is challenging his furlough for no more than 11 days between July 8, and September 30, 2013. Initial Appeal File (IAF), Tab 1 at 19. At that time, he was employed by the Department of Defense (DOD), Defense Information Systems Agency (DISA), as a General Engineer, GS-0801-13, in Denver, Colorado. *Id.* at 1, 84. After he withdrew his hearing request, IAF, Tab 9 at 1, the administrative judge affirmed the furlough action based on the written record, IAF, Tab 26, Initial Decision (ID). The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1.

## ANALYSIS AND FINDINGS

The appellant's arguments regarding the agency's representation are not a basis for disturbing the initial decision.

¶3    The appellant asserts that DISA "is not authorized to represent [DOD] in an appeal case brought against [DOD]" and that he "most certainly never agreed to allow a subordinate organization, without the authority to speak for [DOD] or its decisions, to represent the Government's interests." *Id.* at 5. He argues that the

agency's representative, who is a senior attorney advisor at DISA, IAF, Tab 8 at 4, 9, "does not have appropriate standing to represent the Government's case," PFR File, Tab 1 at 5. He claims that the administrative judge failed to address these arguments or the "deleterious effects" to his case "by not having required the Government to defend itself as the case was initially brought." *Id.*

¶4 The appellant's clearest expression of these arguments is contained in his close of the record submission below entitled "Final Arguments." IAF, Tab 16 at 4-5. He emphasized that he was appealing the DOD decisions that essentially "predetermined" his furlough as implemented by officials at DISA. *Id.* He questioned whether DISA could respond adequately to his arguments, but he concluded that DOD must nevertheless "accept the ramifications" of a decision in this appeal based on what he considered to be an inadequate case made by the DISA attorney. *Id.* at 5. Far from seeking to disqualify the agency's designated representative, he specifically stated, "I accept [DISA]'s full and unrestricted representation of [DOD] in this appeal." *Id.*

¶5 To the extent that the appellant is now challenging the agency's designation of its representative in this case, PFR File, Tab 1 at 5, his challenge is denied as untimely and for failure to state a valid basis for disqualifying a representative under the Board's regulations, *see* 5 C.F.R. § 1201.31(b) (a party may challenge the designation of a representative on the ground that it involves a conflict of interest or a conflict of position, but he must file a motion to disqualify within 15 days after service of the notice of the designation or becoming aware of the conflict). Further, the appellant has failed to show any prejudice to his substantive rights based on the agency's representation or the manner in which the appeal was adjudicated. All of his evidence and arguments have been fully considered, including those concerning "predetermination" and the decisions of DOD officials outside of DISA.

<u>The administrative judge applied the proper analytical framework in determining whether the furlough promoted the efficiency of the service.</u>

¶6    The appellant argues that the agency failed to prove that the furlough was necessary or promoted the efficiency of the service. PFR File, Tab 1 at 7-9, 12-15. He contends that the agency was obligated to show that the furlough was "efficient" under the common meaning of the word as a reasonable management solution to the budgetary shortfall. *Id.* at 7-9. He asks the Board to define "efficiency of the service" without relying on case law he considers to be irrelevant to the furlough action. *Id.* at 12-15.

¶7    In recent decisions, the Board has extensively addressed the application of the efficiency of the service standard in the context of a furlough. The agency satisfies the efficiency of the service standard in a furlough appeal by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it, and that the agency applied its determination as to which employees to furlough in a "fair and even manner." *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 8 (2013) (citing *Clark v. Office of Personnel Management*, 24 M.S.P.R. 224, 225 (1984)). Applying its determinations in a "fair and even manner" means that the agency treated similar employees similarly and justified any deviations with legitimate management reasons. *Id.*

¶8    Agencies, however, may exercise considerable discretion in taking actions to avoid a deficit. *See Waksman v. Department of Commerce*, 37 M.S.P.R. 640, 645 (1988), *aff'd sub nom. Harris v. Department of Commerce*, 878 F.2d 1447 (Fed. Cir. 1989) (Table). Furloughs are one such tool for that purpose. *See* 5 U.S.C. § 7511(a)(5) (defining furlough as "the placing of an employee in a temporary status without duties and pay because of lack of work or funds or other nondisciplinary reasons"); 5 C.F.R. § 752.402 (same). In determining whether the agency structured a furlough in a fair and even manner, the Board will not second guess the agency's assessment of its mission requirements and priorities, e.g., such as an agency's determination as to the number of individuals needed to

protect property, safety, and health during a furlough. *Lopez v. Department of the Navy*, 121 M.S.P.R. 647, ¶ 16 (2014). The efficiency of the service determination does not encompass agency spending decisions per se, including spending on personnel matters, *Chandler*, 120 M.S.P.R. 163, ¶ 9, nor does it encompass an agency's decision to allocate furlough days in a certain manner among employees who are not similarly situated, *id.* (citing *Waksman*, 37 M.S.P.R. at 645-46). The Board has held that such matters are within the judgment of agency managers, who are in the best position to decide how to accomplish the agency's mission. *Id.* However, the efficiency of the service determination does encompass issues relating to the uniform and consistent application of the furlough including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons. *Id.*

¶9      We find that the administrative judge notified the parties of the standard as set forth in *Chandler*, IAF, Tab 12 at 3-4, and he properly applied that standard in the initial decision, ID at 3-5.

The agency proved its case by preponderant evidence.

¶10      The appellant challenges the form of the agency's evidence showing that the furlough promoted the efficiency of the service. PFR File, Tab 1 at 8-9. He argues that the sworn statements of DOD's Under Secretary of Defense (Comptroller)/Chief Financial Officer and the deciding official are insufficient to establish that the agency acted to support the efficiency of the service because the agency also has not provided the detailed information upon which the officials relied in making those statements. *Id.*; IAF, Tab 20 at 24-34, 36-37. Unrebutted sworn statements, declarations, and affidavits, however, are competent evidence of the matters asserted therein. *See Truitt v. Department of the Navy*, 45 M.S.P.R. 344, 347 (1990); *Schaefer v. U.S. Postal Service*, 42 M.S.P.R. 592, 595 (1989); *Woodall v. Federal Energy Regulatory Commission*, 30 M.S.P.R. 271, 273 (1986). Though such documents are hearsay, the Board affords them the weight

to which they are entitled by considering several factors in its deliberations. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-87 (1981).

¶11    Here, the appellant has offered no contradictory evidence to counter the statements given by the agency officials. *See id.* at 87. Both statements were signed under penalty of perjury. IAF, Tab 20 at 33-34, 37; *see Borninkhof*, 5 M.S.P.R. at 87. The statements also are consistent with each other and with other evidence in the record. *E.g.*, IAF, Tab 1 at 41-52, Tab 20 at 42-43; *see Borninkhof*, 5 M.S.P.R. at 87. Additionally, the appellant could have called as witnesses and examined the officials whose statements the agency submitted, but he withdrew his hearing request. IAF, Tab 9 at 1. Whether or not to hold a hearing was entirely his decision in this case. *See* 5 C.F.R. § 1201.24(d). Accordingly, we find that his arguments are unavailing.

The administrative judge properly addressed the appellant's claims that the agency's furlough process was predetermined and violated his due process rights.

¶12    The appellant argues that the administrative judge ignored or rejected his evidence and arguments establishing that furlough decisions were predetermined when they were proposed. PFR File, Tab 1 at 6, 20-21. He asserts that DISA did not conduct its decision-making processes based on earlier departmental authorizations, such as the Secretary of Defense's May 14, 2013 memorandum to the entire department, *see* IAF, Tab 1 at 41-52, with the full and objective consideration of individuals' circumstances, and thus it denied those individuals their due process rights, PFR File, Tab 1 at 6. He asserts that the deciding official misled agency employees when he stated that he made the furlough decision for each individual. *Id.*; *see* IAF, Tab 20 at 36-37. The fact that employees received form decision letters, he asserts, disproves the deciding official's statement that he considered each employee's case individually. PFR File, Tab 1 at 6; *see* IAF, Tab 20 at 37.

¶13    The Board, however, has held that the DOD furlough process, which flowed from the Secretary's May 14, 2013 memorandum, generally afforded due process

to agency employees. *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶¶ 18-25 (2014); *see Rodgers v. Department of the Navy*, 122 M.S.P.R. 559, ¶¶ 5-9 (2015) (finding that, under the departmental memorandum, the deciding official possessed sufficient decision-making authority to satisfy the appellant's right to due process); *see also Kelly v. Department of the Army*, 121 M.S.P.R. 408, ¶ 15 (2014) (finding that the agency could rely upon the departmental memorandum and other supporting documents issued by the Secretary and other senior DOD officials, rather than analyses specific to each furloughed individual, to support a finding that the agency had met the efficiency of the service standard).  We find no reason to reach a different result in this case.  The appellant does not dispute that he received a furlough proposal notice affording him an opportunity to file a reply, filed such a reply, and received a notice of the agency's decision to furlough him.  IAF, Tab 1 at 19-22, 31-37.  Although the deciding official's authority was limited in the sense that the furlough parameters were established by the Secretary of Defense, he possessed sufficient decision-making authority in the context of this agency-wide furlough to satisfy the appellant's right to due process.  IAF, Tab 20 at 36-37; *see Rodgers*, 122 M.S.P.R. 559, ¶ 7.

The appellant is not similarly situated to employees who were not furloughed.

¶14      The appellant argues that the agency's broad furlough powers open the door to circumstantial discrimination if the agency treats similarly situated employees differently.  PFR File, Tab 1 at 9-10.  Although the appellant uses the term "discrimination," he has not alleged prohibited discrimination on any basis set forth in 5 U.S.C. § 2302(b)(1), i.e., race, color, religion, sex, national origin, age, disability, marital status, or political affiliation.  Instead, he asserts that "[w]hen workers are furloughed in one situation and not furloughed in another, discrimination has occurred."  PFR File, Tab 1 at 9.  His pleadings below were more specific in arguing that DOD selectively did not furlough certain personnel affected by tornadoes in Oklahoma and thus created "protected classes" of

civilian employees who were treated more favorably. *E.g.*, IAF, Tab 16 at 17-18; PFR File, Tab 1 at 16-17, 22. The appellant is correct that the initial decision did not explicitly address this argument. PFR File, Tab 1 at 16. We supplement the initial decision to explain that his argument is unavailing for the following reasons.

¶15 In *Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶¶ 1, 4, 18-22 (2014), the Board addressed the Department of the Air Force's decision not to furlough so-called "safe haven" employees who were receiving "continuation of salary" payments under 5 U.S.C. §§ 5522-5523 following evacuation from the area around Tinker Air Force Base, Oklahoma, due to tornadoes in May 2013. In that appeal, the Department of the Air Force argued that it believed that it was prohibited by statute from furloughing employees while they were receiving such payments. *Tinker*, 121 M.S.P.R. 385, ¶¶ 4, 7. The Board found that the agency was required to prove that the relevant officials reasonably and genuinely believed they were precluded from furloughing the "safe haven" employees. *Id.*, ¶ 22. The Board ordered further adjudication of that issue as part of the agency's burden establishing that it treated similar employees similarly and justified any deviation with legitimate management reasons. *Id.*, ¶¶ 17, 23.

¶16 Nothing in the record suggests that the appellant was similarly situated to DOD civilian employees in Oklahoma who were not furloughed because they were receiving "safe haven" payments. He has not alleged that he was similarly receiving "safe haven" payments. Further, his DISA position in Colorado is in a different organizational unit and geographical location, and thus he is not similarly situated to the Oklahoma employees for purposes of this furlough. IAF, Tab 1 at 84; *see Weathers v. Department of the Navy*, 121 M.S.P.R. 417, ¶¶ 8-9 (2014). We find no evidence in the record showing that the agency treated the appellant differently from any similarly situated employee concerning this furlough. *See, e.g.*, IAF, Tab 20 at 24-37. Thus, the appellant's assertion of

"potentially discriminatory relief to some employees ([under] "Safe Havens" authority)," PFR File, Tab 1 at 22, does not provide a sufficient basis for disturbing the administrative judge's finding that the agency applied its determination as to which employees to furlough in a fair and even manner, ID at 9; *see Chandler*, 120 M.S.P.R. 163, ¶ 8.

**10 U.S.C. § 129 does not preclude the furlough of employees paid through a working capital fund (WCF).**

¶17      Next, the appellant argues that the agency violated 10 U.S.C. § 129(b)(2)[2] by furloughing employees who are paid through a WCF. PFR File, Tab 1 at 15-16. He asserts that the administrative judge relied on DOD's "unsupported written statements" interpreting the relevant law and that the agency failed to produce any supporting evidence showing that WCF employees could be furloughed. *Id.* at 15. He further asserts that submitting WCF employees to a furlough was harmful error. *Id.* at 16.

¶18      In the initial decision, the administrative judge explained that the appellant had argued that the agency interpreted 10 U.S.C. § 129 as allowing it to exempt WCF employees from the furlough during the October 2013 government shutdown, whereas it did not exempt WCF employees from having to take furlough days between July and September 2013. ID at 7. The appellant asserted that the agency could not fairly change its interpretation of the statute during the 3-month period between the two furloughs. *Id.*; *see* IAF, Tab 16 at 4, 10-11. The

---

[2] The statute states:

> The number of, and the amount of funds available to be paid to, indirectly funded Government employees of the Department of Defense may not be . . . managed on the basis of any constraint or limitation in terms of man years, end strength, full-time equivalent positions, or maximum number of employees.

10 U.S.C. § 129(b)(2). The term "indirectly funded Government employees" means civilian employees "who are employed by industrial-type activities, the Major Range and Test Facility Base, or commercial-type activities described in section 2208 of this title; and . . . whose salaries and benefits are funded from sources other than appropriated funds." 10 U.S.C. § 129(c).

administrative judge explained that he was unable to address the agency's apparent decision not to furlough the appellant during the government shutdown, but he found nothing in the statutory language that prohibited DOD from furloughing WCF employees, although somewhat to the contrary, the statute requires DOD to manage its personnel consistent with workload requirements and funding made available to the department.  ID at 7-8; *see* 10 U.S.C. § 129(a).  The administrative judge also relied on evidence that funds saved by the furlough of WCF employees could be used for other priorities.  ID at 8; IAF, Tab 20 at 31-32, 42-43.

¶19      We have considered the appellant's arguments concerning the meaning of 10 U.S.C. § 129, but we find no reason to disturb the administrative judge's finding that the plain language of that statute does not prohibit furloughing employees paid through a WCF.  ID at 8.  The statute does not refer to furloughs, but rather specifies management constraints or limitations in terms of "man years, end strength, full-time equivalent positions, or maximum number of employees."  10 U.S.C. § 129(b)(2).  Even assuming WCF funds were exempt from sequestration under 10 U.S.C. § 129 or some other basis, the issue is whether the furlough was a reasonable management solution to the financial restrictions placed on the agency.  *Einboden v. Department of the Navy*, 122 M.S.P.R. 302, ¶ 13 (2015).[3]  As explained in *Einboden*, DOD reasonably could consider its budget holistically rather than isolate the funding situation for each of its subordinate organizations or components.  *Id.*, ¶ 15.  Here, as in *Einboden*, we find no indication in the record that the Secretary of Defense was prohibited from using savings resulting from the furloughs of WCF employees to address other budgetary needs, and we find no reason to disturb the administrative judge's crediting of evidence to the contrary.  ID at 8; *see Einboden*, 122 M.S.P.R. 302, ¶ 16.    Thus, we agree with the administrative judge that the agency has

---

[3] The Board issued *Einboden* 3 days after the administrative judge issued the initial decision in this appeal.

established that the furlough was a reasonable management solution to its financial restrictions notwithstanding the appellant's arguments regarding WCFs and 10 U.S.C. § 129. *See Einboden*, 122 M.S.P.R. 302, ¶¶ 16, 18.

During the proceedings below, the appellant did not object to the contents of the amended agency file or allege that the agency failed to comply with the discovery order.

¶20    The appellant asserts, moreover, that the agency failed to provide "process documentation" that would show the agency's matrix or decision-making process used in furloughing individual employees. PFR File, Tab 1 at 17. The appellant requested such documentation during discovery, but the agency objected to his request as being overbroad and in excess of the agency's burden of proof. IAF, Tab 11 at 6. The administrative judge, however, ordered the agency to provide "guidance and/or policies that governed how DISA granted or denied furlough exemptions," and in the absence of such guidance or policies, to submit "other evidence it has about its process for granting or denying exemptions, or explain the absence of such evidence or policy." IAF, Tab 12 at 2. Documents in the amended agency file submitted late in the proceedings include broad statements regarding the exemption of individual employees. IAF, Tab 20 at 36-37, 68-71. The agency also noted in its overview that individuals affected by the tornadoes in Oklahoma had been exempt from furlough. *Id.* at 6.

¶21    The agency submitted the amended agency file only after the administrative judge deemed the first version of the file inadequate and ordered the agency to resubmit it. IAF, Tab 18. The agency submitted the amended file 25 days after it was due. *Compare id.*, *with* IAF, Tab 20. The appellant sought to strike the amended file as untimely, and he persisted in asserting that it should not have been added to the record, even after the administrative judge denied his motion to strike. IAF, Tabs 22-23, 25. The appellant did not, however, address any content deficiencies that he might have noticed in the file, nor did he allege any noncompliance with the administrative judge's discovery order. He has not

submitted any previously unavailable evidence supporting his arguments. The appellant's efforts to raise these issues on review are thus unavailing. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

The appellant failed to show that the administrative judge was biased or abused his discretion in managing the appeal.

¶22 The appellant asserts that the administrative judge made certain erroneous procedural decisions and that he was biased in the agency's favor during the proceeding below. PFR File, Tab 1 at 17-20. He argues that the administrative judge erred when he declined to review the tape of an April 18, 2014 teleconference wherein the agency representative allegedly stated that the agency used the *Douglas* factors in making individual furlough decisions.[4] *Id.* at 17-18; *see* IAF, Tabs 14-15. The appellant also asserts that the administrative judge repeatedly allowed the agency to file untimely pleadings. PFR File, Tab 1 at 18-19. He additionally asserts that, in the aggregate, the administrative judge's procedural decisions show bias in the agency's favor. *Id.* at 19-20. He argues that the administrative judge allowed the agency to file minimally probative pleadings that did not address his specific allegations, and that the administrative judge cited newly decided Board cases that "solidify . . . the Government's defenses against future appeals." *Id.*

¶23 The appellant's allegations of error are properly analyzed as abuse of discretion claims because they describe particular decisions regarding case management, development of the record, and the admissibility of the evidence. The Board's regulations give the administrative judge wide discretion in these

---

[4] Because a furlough action is not disciplinary in nature, the penalty factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), do not apply. *Chandler*, 120 M.S.P.R. 163, ¶ 31.

areas.  *See* 5 C.F.R. § 1201.41(b)(3)-(5), (8), (10), (15).  The appellant accurately asserts that the agency was slow to submit the updated agency file and that its initial response to the administrative judge's acknowledgement order was minimal.  IAF, Tabs 6-7, 17-18, 20.  When the appellant moved to strike the agency's submission as untimely filed, however, IAF, Tab 22, the administrative judge declined, explaining that it was within his discretion to admit the submission into the record, IAF, Tab 23.  The administrative judge explained that refusal to admit relevant evidence would not further the expeditious resolution of the appeal, even if such evidence was untimely filed.  *Id.*  We find that the administrative judge acted within his sound discretion.

¶24        We likewise find the administrative judge acted within his sound discretion when he declined to review the tape of the April 18, 2014 teleconference.  IAF, Tab 15; *see* IAF, Tab 12.  The appellant submitted his recollection of the teleconference for the record.  IAF, Tab 14.  On review, he argues that the administrative judge "elect[ed] to not consider the submitted argument and evidence in support of the case because it [was] a 'poor use' of the Board's time."  PFR File, Tab 1 at 18.  The record shows that the administrative judge responded to the appellant's pleading regarding his recollection of the teleconference, explaining that such recollections were not admissible evidence.  IAF, Tab 15 at 2.  The administrative judge also explained that he would not review the tape because he had not taken any evidence under oath during the call and he had likewise made no findings of fact.  *Id.*  Under the circumstances, the administrative judge acted within his discretion.  We further note that, except for the parties' stipulations of fact, statements made during a status conference are not evidence.  *Spradlin v. Office of Personnel Management*, 84 M.S.P.R. 279, ¶ 8 (1999).

¶25        As for the appellant's allegations of bias, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators.  *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386

(1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if his comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant has not met his burden to show such favoritism or antagonism. Although he asserted that an unfavorable ruling on his motion to strike "would show a clear and present bias on the behalf of the Government," we do not agree. IAF, Tab 22 at 5. One of the administrative judge's primary responsibilities is development of the record. 5 C.F.R. § 1201.41(b)(5)(ii), (10). Rejecting the agency's pleadings would not have allowed the administrative judge to meet that responsibility. The appellant has not shown that his substantive rights were prejudiced by the agency's delays. In any event, we note that the appellant failed to support his allegations of bias with an affidavit. *See Lee v. U.S. Postal Service*, 48 M.S.P.R. 274, 280-82 (1991). For all of the foregoing reasons, we affirm the initial decision as modified.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec.

27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.