NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LEONARD ENGLISH, JR.,**
*Petitioner*

**v.**

**SMALL BUSINESS ADMINISTRATION,**
*Respondent*

---

2016-2119

---

Petition for review of the Merit Systems Protection Board in No. DE-1221-15-0090-B-1.

---

Decided: October 28, 2016

---

LEONARD ENGLISH, JR., Aurora, CO, pro se.

ZACHARY JOHN SULLIVAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before NEWMAN, LOURIE, and DYK, *Circuit Judges.*

PER CURIAM.

Leonard English, Jr. petitions for review of a final order of the Merit Systems Protection Board ("Board") in an individual right of action appeal. The Board denied English's request for corrective action. The Board found that English had made a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the adverse personnel actions. But the Board concluded that the Small Business Administration ("agency" or "SBA") had established by clear and convincing evidence that it would have taken the same personnel actions absent the protected disclosure. We *affirm*.

BACKGROUND

English is a surety bond guarantee specialist with the SBA. On April 18, 2014, English sent an email to his first-line supervisor, Jennifer Vigil, expressing concerns about a co-worker, including allegations that the co-worker was abusing the time and attendance policies. The email stated that English's co-worker "said he knew everything management could and couldn't do. He said he knew this because he was the timekeeper at the USDA [in his prior employment]. When he started with us, he came to work late, took extended lunches, and left early." J.A. 150. English's second-level supervisor, Peter Gibbs, was also aware of this disclosure.

On August 15, 2014, Vigil issued English a letter of reprimand for "Unprofessional Correspondence to your Supervisor." J.A. 130. The reprimand referenced a July 30, 2014, meeting and subsequent email to English that set forth "expectations for behavior in the office." J.A. 130. These expectations included "always be[ing] respectful and professional to management, team members, agents and contractors . . . [in] both oral and written communication." J.A. 130. The reprimand identified two subsequent emails sent by English to Vigil on August 6 and 8, 2014, that were "unprofessional in both content

and tone," J.A. 131–32, with one including "accusations against [Vigil], specific and implicit, [that] were unsupported and not in the style of a civil discourse between mature professionals," J.A. 132. The letter of reprimand did not mention the April 18, 2014, email.

On October 24, 2014, English received an annual performance appraisal from his supervisor, Vigil, that included a rating of 3 out of 5 for overall performance and for each of the five individual evaluation elements. This performance appraisal was also reviewed by Gibbs. His performance in this position was reviewed according to five elements: (1) administrative functions; (2) application processing; (3) bond guarantee activity; (4) customer satisfaction; and (5) written materials. Vigil stated in the performance appraisal that English (1) "performed administrative functions accurately . . . [with] 2 mail errors in 2014," J.A. 115, (2) that he "processes applications with minimal errors" but "could improve on following up on conditions . . . and returning applications that are past the deadline," J.A. 116, (3) that he "[m]eets [e]xpectations (Level 3)" regarding bond guarantee activity, J.A. 117, (4) that he "could improve on customer service by more professional communication with agents, team members and management," J.A. 118, (5) that he "could improve on [his] communication skills . . . [and f]requently uses unprofessional language in email and uses Reply All in situations inappropriately," J.A. 120, and (6) that he "meets expectations [overall but that t]here are areas that [English] and [Vigil] ha[d] discussed where he can focus on improving," J.A. 120. The performance appraisal made no reference to the April 18, 2014, email.

In August 2014, English filed a complaint with the Office of Special Counsel ("OSC") alleging, inter alia, that the letter of reprimand was in retaliation for whistleblowing reflected in his April 18, 2014, email. He later amended the complaint to add the annual performance review. OSC investigated his complaint and determined

that the agency had not violated 5 U.S.C. § 2302(b)(8), which covers reprisal for whistleblowing.  On November 14, 2014, OSC advised English of his right to seek corrective action from the Board.

On November 25, 2014, English brought an individual right of action appeal to the Board, alleging that both the letter of reprimand and the annual performance appraisal constituted retaliation for whistleblowing.  The Administrative Judge ("AJ") dismissed for lack of jurisdiction because English had not articulated a nonfrivolous allegation that "he engaged, or was perceived to have engaged, in whistleblowing or other [protected] activity . . . ."  J.A. 59.  On a petition for review, the Board remanded to the AJ.  The Board held that English's allegations of his coworker's time and attendance abuse in the April 18, 2014, email were sufficiently specific to qualify as a protected disclosure and to confer jurisdiction.

On remand, the AJ concluded that English's April 18, 2014, email constituted a protected disclosure.  The AJ also found that under 5 U.S.C. § 1221(e)(1) it would be presumed that this protected disclosure was a contributing factor in the personnel actions at issue—the letter of reprimand and the performance appraisal—given the relative timing and awareness of the disclosure by English's supervisors.  The AJ further found that the agency had "shown by clear and convincing evidence that it would have taken the same actions absent the April 18, 2014 disclosure."  J.A. 31.

On review, the Board denied the petition for review and affirmed the remand decision by the AJ.

English petitions for review.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

In an individual right of action appeal for whistleblowing reprisal, the employee's prima facie case requires (1) a protected disclosure under 5 U.S.C. § 2302(b)(8) and (2) that the disclosure was a contributing factor in the personnel action taken against the employee. 5 U.S.C. § 1221(e)(1). This section specifically allows an employee to show that the protected disclosure was a contributing factor through circumstantial evidence that the relevant official knew of the protected disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude it was a contributing factor. 5 U.S.C. § 1221(e)(1)(A)–(B). Once an employee has established a prima facie case, the Board is required to order appropriate corrective action unless "the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).

In his petition for review, English challenges the Board's conclusion that clear and convincing evidence showed that the agency would have taken the same personnel action absent English's protected disclosure. In particular, English argues that the Board improperly applied the second and third factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

*Carr* provides that the following factors are relevant for determining whether an agency has carried its burden: "[1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees

who are not whistleblowers but who are otherwise similarly situated." *Id.* The Board then weighs these factors together to evaluate the strength of the evidence as a whole. *McCarthy v. Int'l Boundary & Water Comm'n*, 116 M.S.P.R. 594, ¶ 44 (M.S.P.B. 2011).

Regarding the first *Carr* factor, substantial evidence supports the Board's finding that this factor weighed in favor of the agency given the strength of the proffered reasons for the letter of reprimand and the ratings in the annual performance appraisal, neither of which was based on the protected disclosure. Re-weighing conflicting evidence is not our function. *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). The AJ found English's supervisors, Vigil and Gibbs, to be credible witnesses. In particular, "Vigil[] was highly credible in her testimony about the details of her reprimand and her performance rating." J.A. 32. The Board considered the emails sent on August 6 and 8, 2014, that were the subject of the reprimand in the full context of their email chains, and compared them to other emails offered by English, which he claimed were similar to the August 6 and 8, 2014, emails and for which he did not receive a reprimand. The Board concluded that those other emails "were not as offensive as [his] August [6] and [8], 2014 emails." J.A. 34. The Board also considered the ratings criteria for the five performance elements and the evidence supporting the rating of 3 that English received for each element and for his overall performance. This evidence included, inter alia, English's change in attitude and resulting drop in performance, rate of mail errors, lack of initiative and independence in performing his duties, application error rate and processing speed, including delays past the 4.5 day average deadline, delayed response time to customer requests, and unprofessional communication with agents, contractors, co-workers, and management. On this record, the reasons relied on by the agency to support the letter of reprimand and the performance appraisal were

sufficient to justify the agency's actions, apart from English's April 18, 2014, email. Substantial evidence supports the Board's conclusions.

Regarding the second *Carr* factor, the Board found "that the agency's retaliatory motive was extremely slight if it existed at all." J.A. 35. English challenges this conclusion because his "protected disclosure was against the management's preferred employee and someone that should be an embarrassment to them." Pet'r's Supp. Br. 16. But the AJ credited Vigil's testimony that "she gave [the report of alleged time and attendance abuse] very little thought because it was before her time at the agency and contrary to what she had observed" and Gibbs's testimony that "he considered the time and attendance concern to be a 'non-issue.'" J.A. 35. The Board also concluded that there was no evidence that Vigil or Gibbs was embarrassed or inconvenienced by the disclosure. Substantial evidence supports the Board's conclusions.

Regarding the third *Carr* factor, the Board found it to be neutral since there was no evidence that showed either consistent or disparate treatment for similarly situated non-whistleblowers. The Board did not err in this respect.

English also argues that the Board erred by not requiring the AJ to perform an analysis of the seven factors enumerated in *Hillen v. Department of Army*, 35 M.S.P.R. 453, 458 (M.S.P.B. 1987) to resolve credibility issues. In his decision, the AJ cited to *Hillen* and referenced the seven factors in discussing applicable law. In his analysis, the AJ made explicit credibility determinations based on the relevant *Hillen* factors, in particular the demeanor of the witnesses and the consistency of their testimony with other evidence in the record. On appeal, the Board found no error with the AJ's credibility determinations. While the *Hillen* factors guide the Board's resolution of credibility determinations, they need not be applied

formalistically.   Since the AJ clearly considered and
applied the relevant factors, we find no error.

Lastly, English challenges the Board's conclusion that
it was not an abuse of discretion for the AJ to exclude two
witnesses from testifying.   Since the AJ found that the
witnesses would not present any relevant, legally admissible testimony, this was not an abuse of discretion.

## AFFIRMED

### COSTS

No costs.