**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KATHLEEN MARY KAPLAN,
   Appellant,

  v.

DEPARTMENT OF THE AIR FORCE,
   Agency.

DOCKET NUMBER
DC-0432-17-0195-I-1

DATE: October 6, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

Kathleen Mary Kaplan, Arlington, Virginia, pro se.

Caroline Raines Greenfield and Jeremiah Crowley, Joint Base Andrews, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which affirmed her removal for inadequate contribution. For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the Washington Regional Office for further adjudication

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

consistent with *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2        The appellant was a DR-IV Principal Computer Scientist for the Air Force Office of Scientific Research (AFOSR). Initial Appeal File (IAF), Tab 7 at 52. Her principal duties involved managing the agency's basic research program in software and systems, evaluating scientific opportunities, evaluating and selecting research proposals, and advocating research programs to management, stakeholders, and agency review panels. IAF, Tab 17 at 29. This was a pay band position under an Office of Personnel Management demonstration project, utilizing a contribution-based compensation system. IAF, Tab 18 at 5-16, Tabs 19-22, Tab 23 at 8; *see generally* National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 342(b), 108 Stat. 2663 (1994); 5 U.S.C. § 4703; 5 C.F.R. part 470.

¶3        The contribution-based compensation system works by linking employees' salaries to their actual contributions to the agency's mission. IAF, Tab 19 at 16.[2] The system has five "broadbands," each encompassing a salary range and a corresponding contribution range—the higher the salary, the greater the contribution expected and vice versa. *Id.* at 14, 16-18. As a DR-IV employee with an annual salary of $120,290 (not including a $29,907 locality adjustment), the appellant was expected to have an overall contribution score of 4.3. IAF, Tab 23 at 8. Science and engineering employees, like the appellant, are rated on four areas of contribution: (1) Problem solving; (2) communication; (3) technology management; and (4) teamwork and leadership. IAF, Tab 21 at 9-12, Tab 23 at 9-10. An employee earns a score for each of these areas, and

---

[2] Tabs 19 through 22 of the Initial Appeal File contain the text of the regulation governing the contribution-based compensation system at issue, 75 Fed. Reg. 53,076 (Aug. 30, 2010).

the four scores are averaged to arrive at an overall contribution score. IAF, Tab 20 at 4, Tab 23 at 8-10. Initial contribution ratings are assessed by an employee's immediate supervisor and then presented to a "meeting of managers," who are responsible for refining the initial ratings as appropriate to arrive at a final rating that is equitable in comparison to all employees under their purview. IAF, Tab 20 at 4. A deviation of 3/10 of a point or less between expected contribution and actual contribution is deemed acceptable. IAF, Tab 19 at 19.

¶4    If an employee earns an overall contribution score more than 3/10 of a point lower than her expected score, her contribution is deemed to be inadequate and management is required to take remedial action, which may include a contribution improvement plan (CIP).[3] *Id.* at 7. A CIP is analogous to a performance improvement plan under 5 C.F.R. part 432 and replaces those procedures for covered employees. *Id.* Under CIP procedures, an employee is entitled to a reasonable amount of time (a minimum of 60 days under the demonstration project) to demonstrate adequate contribution. *Id.* Management is obliged to offer the employee appropriate assistance in meeting her goals. *Id.* At the end of the CIP, a meeting of managers will convene to determine whether the employee has brought her contribution up to expectations. IAF, Tab 18 at 12. If she has not, management has the sole discretion to initiate a reduction in pay or a removal. IAF, Tab 20 at 7. An employee subjected to such an action has the right to appeal to the Board under the procedures of 5 C.F.R. § 432.106(a). *Id.* at 8.

¶5    Turning to the facts of this case, the appellant was a Program Officer in charge of a portfolio of research projects related to systems and software development, whereby money would be allocated to promote the various fields of research therein. Hearing Recording, May 22, 2017 (HR 1) at 18:00 (testimony of the Chief Scientist). Like other Program Officers, the appellant was

---

[3] These procedures may be invoked at any point during the contribution year during which an employee's contribution falls below the acceptable level. IAF, Tab 20 at 8.

responsible for presenting her portfolio biennially to the Air Force Scientific Advisory Board (SAB), an advisory committee of civilian experts appointed by the Secretary of Defense to make recommendations on scientific and technical matters. IAF, Tab 23 at 12; HR 1 at 25:25 (testimony of the Chief Scientist). The appellant presented her portfolio to the SAB in March 2016, and the SAB was highly critical of it. Specifically, the SAB found that the appellant's portfolio lacked "technical direction and rigor," was "behind the state of the art," and concerned projects that had limited application to agency needs. IAF, Tab 23 at 19-20. The SAB recommended that the agency "[m]ake no further investments in the Systems and Software portfolio until proper focus on key systems and software research is achieved." *Id.* at 20. Following this SAB feedback, on March 11, 2016, the Director of AFOSR recommended that the appellant be placed on a CIP. IAF, Tab 39 at 74.

¶6 On May 25, 2016, the Chief of the Engineering and Information Science Branch issued the appellant a notice placing her on a 90-day CIP effective immediately. IAF, Tab 17 at 16-24. The CIP notice identified deficiencies in each of the appellant's four contribution areas and explained what her expected contribution during the CIP would be. *Id.* at 19-22. The appellant was expected to demonstrate adequate contribution by following a prescribed process to set a new focus for the Systems and Software portfolio, as well as prepare and articulate the portfolio's basic research areas, strategic vision, and researcher state-of-the-art accomplishments. *Id.* at 22. Her work was to culminate in a written proposal and a presentation to agency management. *Id.* The final written proposal was due on August 10, 2016, and the presentation was scheduled for August 23, 2016. *Id.* at 23. The CIP also scheduled several interim milestones for the appellant to meet on her way to the finished product. *Id.*

¶7 At the close of the CIP period, on August 29, 2016, a meeting of managers consisting of the Division Chief and the Chiefs of the Engineering and Information Science and Physical and Biological Sciences Branches convened to

discuss the appellant's contribution during the CIP.[4]  IAF, Tab 39 at 54.  These officials concluded that the appellant's work during the CIP earned her only a 1.78 contribution score overall, and that she had therefore failed to demonstrate satisfactory contribution.  IAF, Tab 7 at 83-86.  They recommended her removal.  IAF, Tab 39 at 69.  On August 30, 2016, the Branch Chief[5] issued the appellant a notice of proposed removal.  IAF, Tab 7 at 91-97.  After the appellant responded, *id.* at 57-79, the AFSOR Director issued a decision removing the appellant effective November 30, 2016, *id.* at 52, 54-55.

¶8    The appellant filed a Board appeal and requested a hearing.  IAF, Tab 1.  Prior to the hearing, the administrative judge issued an order identifying affirmative defenses of due process and "reprisal for protected [equal employment opportunity (EEO)] activity or for activity."  IAF, Tab 42 at 2.  After the hearing, the administrative judge issued an initial decision finding that the agency proved its case and that the appellant failed to prove her affirmative defenses.  IAF, Tab 49, Initial Decision (ID).  Accordingly, the administrative judge affirmed the appellant's removal.  ID at 39.

¶9    The appellant has filed a petition for review disputing numerous aspects of the initial decision.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response, PFR File, Tab 4, and the appellant has filed a reply to the agency's response, PFR File, Tab 5.[6]

---

[4] Two other officials were present at the meeting, the AFOSR Chief of Operations Management and a Management Analyst—the former to act as a technical advisor and the latter to take notes.  They had no input into the Division's and Branch Chiefs' assessing the appellant's contribution.  HR 1 at 3:59:55 (testimony of the Management Analyst).

[5] Unless otherwise indicated, "Branch Chief" refers to the appellant's immediate supervisor, who was the Chief of the Engineering and Information Science Branch during the relevant period.

[6] After the close of the record on review, the appellant filed a motion to disqualify the administrative judge, supported by her correspondence with the Utah State Bar Association Office of Professional Conduct, Utah being the jurisdiction in which the administrative judge is licensed to practice law.  PFR File, Tab 7.  The appellant filed a

**ANALYSIS**

¶10    The administrative judge found that the agency had the burden to prove, by substantial evidence, that:  (1) it notified the appellant that she would be placed on a CIP; (2) it informed her of what she must do during the CIP to demonstrate acceptable contribution and warned her that failure to do so could result in an adverse action; (3) it gave her a reasonable opportunity to demonstrate acceptable contribution during the CIP; and (4) her contribution during the CIP was unacceptable.  ID at 2-3.  These are the same elements and burden of proof that the Board applied in *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 7 (2015), another appeal involving a removal for inadequate contribution under a similar contribution-based compensation system demonstration project. Nevertheless, the Board in *Thompson* made no finding on the correctness of this analytical framework, noting only that neither party disputed it.   122 M.S.P.R. 372, ¶ 7.

¶11    In this case, the appellant argues that the administrative judge should have required the agency to prove its case by preponderant evidence.  IAF, Tab 44; PFR File, Tab 1 at 31.  Specifically, she argues that the agency explicitly removed her to promote the "efficiency of the service," a term found in 5 U.S.C. chapter 75, in which the preponderant evidence standard of proof applies.  PFR File, Tab 1 at 31; IAF, Tab 7 at 91.  She also notes that the governing agency manual states that chapter 75 due process rights apply in contribution-based actions.  PFR File, Tab 1 at 31; IAF, Tab 18 at 13.  We find, however, that neither

complaint with the Office of Professional Conduct concerning the administrative judge's conduct during the course of the Board proceedings, but the Office determined that there was insufficient evidence to establish that the administrative judge engaged in misconduct or that he should otherwise have recused himself from the appellant's case. *Id.* at 12-13.  We find that this evidence is immaterial to the outcome of the appeal and that there is no basis under 5 C.F.R. § 1201.114(k) for the Board to consider this untimely filing.  Therefore, we deny the appellant's motion.

the applicability of due process nor the concept of the "efficiency of the service" have anything to do with the quantum of proof that is required in this appeal.[7]

¶12     We have reviewed the regulation establishing the contribution-based compensation system, as well as the agency's implementing manual, and we agree with the administrative judge that substantial evidence is the appropriate standard of proof.  IAF, Tab 18 at 11-16, Tab 20 at 7-8, Tab 45.  Most convincing is the regulatory language that states in relevant part, "The following procedures are similar to and replace those established in 5 CFR part 432 pertaining to performance-based reduction in grade and removal actions."  IAF, Tab 20 at 7.  We find no reason to interpret these procedures as tacitly abandoning the lowered burden of proof applicable to traditional chapter 43 appeals, particularly because the lowered burden of proof is such a major feature of chapter 43 and the procedures are supposed to be "similar."

The validity of the appellant's contribution standards are not at issue.

¶13     The appellant appears to argue that her contribution standards were invalid because they were not sufficiently specific.  PFR File, Tab 1 at 32.  However, in his prehearing conference summary, the administrative judge did not identify the validity of the contribution standards as an issue to be decided in this appeal, and the appellant did not object to its omission.  IAF, Tab 42 at 1-2.  She is therefore precluded from raising this issue for the first time on review.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); *cf. White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013) (finding in a traditional chapter 43 performance-based action, that the agency is required to

---

[7] To the extent that the appellant is arguing that the administrative judge should have adjudicated this appeal under the standards of 5 U.S.C. chapter 75, we disagree. Notwithstanding the agency's reference to the "efficiency of the service," we find that both the notice of proposed removal and the decision letter provided the appellant clear and explicit notice that this was a contribution-based action taken under the procedures of the contribution-based compensation system demonstration project.  IAF, Tab 7 at 54, 91; *see Penaloza v. Department of Health & Human Services*, 4 M.S.P.R. 322, 326-27 (1980).

prove that the performance standards were valid). In any event, even if the validity of the appellant's contribution standards were at issue, we would find that they are sufficiently specific to provide a firm benchmark for contribution. IAF, Tab 17 at 19-22; *see Henderson v. National Aeronautics & Space Administration*, 116 M.S.P.R. 96, ¶ 20 (2011).

<u>The agency proved by substantial evidence that it informed the appellant of what she must do to demonstrate acceptable contribution during the CIP.</u>

¶14     The administrative judge found that the agency notified the appellant that she would be placed on a CIP, ID at 4-18, and that it informed her of what she must do during the CIP to demonstrate acceptable contribution and warned her that failure to do so could result in an adverse action, ID at 18-21. That the agency notified the appellant that she would be placed on a CIP appears to be undisputed. However, the appellant disagrees that the agency adequately informed her of what she needed to do to succeed. Specifically, she argues that the CIP contained no scores to reach and no measure of how those scores would be calculated. PFR File, Tab 1 at 5-6. She also argues that the administrative judge discussed her expected contribution using several words that did not appear anywhere in the CIP, including "quality," "central task," and "narrowed focus." *Id.* at 6-8.

¶15     We find these arguments unconvincing. First, although the CIP notice itself did not contain the numerical score that the appellant needed to achieve to succeed, we find that she was otherwise well aware, based on her receiving prior annual contribution evaluations, that she was expected to achieve an overall rating of 4.3.[8] IAF, Tab 23 at 8. In any event, this rating was merely a numerical expression of the appellant's expected contribution, which was set forth

---

[8] The appellant repeatedly faults the administrative judge for looking "beyond the four corners of the CIP." PFR File, Tab 1 at 9, 30, 32. However, it is well-established that an agency may inform an employee of the standards that she must meet outside the performance improvement (or in this case contribution improvement) document itself. *Donaldson v. Department of Labor*, 27 M.S.P.R. 293, 298 (1985).

adequately in the CIP document in narrative form. IAF, Tab 17 at 19-22. We do not see how appending a numerical goal to the CIP notice could have made the agency's expectations any clearer. Regarding the particular words that the administrative judge used to describe or paraphrase the requirements of the CIP, we agree with the agency that this amounts to a debate over semantics and provides no basis to disturb the initial decision. PFR File, Tab 4 at 12-13. We have reviewed the CIP notice and we find that the administrative judge correctly understood the document and accurately described it in his initial decision. ID at 19-21. For the reasons explained in the initial decision, we agree with the administrative judge that the appellant was adequately informed of what she needed to do during the CIP to demonstrate acceptable contribution. ID at 18-21.

The agency proved by substantial evidence that the appellant was provided a reasonable opportunity to demonstrate acceptable contribution.

¶16    The appellant disputes the administrative judge's finding that the CIP provided her a reasonable opportunity to demonstrate acceptable contribution. She argues that the CIP comprised tasks that were not part of her normal duties, PFR File, Tab 1 at 8 n.11, that she was not afforded the full 90 days that she was supposed to have under the CIP, *id.* at 11, 17-18, 31-32, and that she was constrained by the directions of the Branch Chief, who was not an expert in computer science, *id.* at 7-8, 24-25.

¶17    We have considered the appellant's arguments, but we find them unpersuasive. First, we disagree that the CIP tasks were outside her normal duties. The appellant had been maintaining the Systems and Software portfolio as part of her regular duties since 2013. Hearing Recording, May 23, 2017, Track 2 at 8:45 (testimony of the appellant). Although the appellant may have been required to additionally document her work on the portfolio during the CIP, we find the CIP tasks were all directed toward improving and managing that portfolio, and that her duties during this time were, therefore, essentially

unchanged. IAF, Tab 17 at 19-23. As for the CIP's duration, even if the appellant was effectively allowed only 76 days to demonstrate acceptable contribution, as she asserts, we find that this was nevertheless a sufficient amount of time for her to do so. The Board has found that 60 or even 30 days is a sufficient time for an employee to demonstrate acceptable performance. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 33 (2010). Also, the governing regulation explicitly states that 60 days is a sufficient amount of time for a CIP. IAF, Tab 20 at 7. Furthermore, because the deadlines for the appellant to complete and present her proposal were provided to her at the beginning of the CIP period, she could not have relied to her detriment on agency misinformation about what the actual length of the CIP would be. *Id.* at 23. Finally, although the appellant might have disagreed with the Branch Chief's guidance, the administrative judge found that the appellant's inadequate contribution during the CIP was attributable not to the guidance, but to her failure to follow it. ID at 24-25. The appellant has not given us a sufficient basis to disturb the administrative judge's findings in this regard. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980). For the reasons explained in the initial decision, we agree with the administrative judge that the agency proved by substantial evidence that it provided the appellant an adequate opportunity to demonstrate acceptable contribution. ID at 21-25.

The agency proved by substantial evidence that the appellant's contribution during the CIP was unacceptable.

¶18    On review, the appellant makes several arguments regarding her contribution during the CIP. First, she argues that she timely completed all of the CIP tasks and met all of the milestones. PFR File, Tab 1 at 26, 33; IAF, Tab 17 at 23. However, the administrative judge addressed this argument in his initial decision and found that the appellant's lack of contribution was not due to her

failure to meet any deadlines, but rather to the quality of the work that she produced.[9]  ID at 26.

¶19    The appellant also disputes the administrative judge's finding that she failed to narrow the focus of her portfolio as required under the CIP.  PFR File, Tab 1 at 8-9; ID at 29.  We agree with the appellant that her final portfolio proposal had nominally a single focus area, IAF, Tab 7 at 99, but it also covered four "additional" proposed focus areas, *id.* at 216-64.  Her proposal approvingly discussed the "extreme" breadth of the current Systems and Software portfolio and recommended that all of the current research areas remain in addition to the new ones that she was proposing.  *Id.* at 130, 139-40.  Furthermore, the administrative judge credited the testimony of several agency witnesses who stated that the appellant's final proposed portfolio was actually broader than the one she had prior to the CIP.[10]  ID at 26-28.  We therefore find that the agency presented substantial evidence that the appellant did not focus her portfolio during the CIP as directed.

¶20    The appellant disputes the administrative judge's findings that her portfolio proposal was long and rambling and that her presentation of the proposal was deficient.  PFR File, Tab 1 at 9-11, ID at 27-29.  However, even if, on review, we were to accept the appellant's characterization of her work product and credit the evidence that she cites in support, we find substantial evidence to support the agency's contention that the appellant's work product demonstrated inadequate contribution.  *See* 5 C.F.R. § 1201.4(p) (defining "substantial evidence").  We

---

[9] To the extent that the appellant is arguing that there was no quality expectation under the CIP, we disagree.  PFR File, Tab 1 at 7; IAF, Tab 7 at 19-23.

[10] The appellant argues that the Branch Chief's hearing testimony was contradicted by the record of his comments at the August 29, 2016 meeting of managers, in which he stated, "She had her area so wide, and did that narrow down portfolio."  PFR File, Tab 1 at 23.  There are some legibility problems with the handwritten notes of this meeting, but we read them as saying "did *not* narrow down portfolio."  IAF, Tab 39 at 56.  The appellant's proffered interpretation does not make any grammatical or contextual sense.

therefore find no basis to disturb the administrative judge's findings on this issue. ID at 27-29.

¶21    The appellant specifically disputes that administrative judge's finding that she could determine and pursue whatever field of inquiry she believed would be of most value to the agency because she had to wait until AFOSR approved her proposed portfolio to pursue anything. PFR File, Tab 1 at 9; ID at 24. We find that this argument is merely a matter of semantics. The appellant does not dispute that she had the freedom to shape the proposed portfolio according to her judgment, which was the central task of the CIP and was clearly what the administrative judge was referring to. IAF, Tab 17 at 22.

¶22    The appellant also argues that because she received the results of her successful midyear contribution review the day after the CIP began, this constituted feedback during the CIP period and she therefore passed the CIP. PFR File, Tab 1 at 14, 33; IAF, Tab 24 at 75-77. We disagree. Although the appellant happened to receive her midyear review during the CIP period, this review pertained to her contribution prior to the CIP and has no bearing on whether she demonstrated an acceptable level of contribution during the CIP. IAF, Tab 24 at 75-77. She further argues that the August 29, 2016 meeting of managers considered performance issues pre-dating the CIP but did not consider her successful midyear review in arriving at its decision. PFR File, Tab 1 at 15, 33. However, as long as the appellant failed to demonstrate acceptable contribution during the CIP period, there is nothing to prevent the agency from relying on contribution deficiencies that occurred at any time during the year preceding the notice of proposed removal. *See Brown v. Veterans Administration*, 44 M.S.P.R. 635, 640 (1990). Furthermore, although the successful midyear contribution review seems inconsistent with other evidence about the appellant's contribution leading up to the CIP, we find that there remains substantial evidence that the appellant's contribution as a whole was inadequate during the time period at issue.

¶23     Finally, the appellant argues that the agency assessed her contribution during the CIP period based on the "rubric" for assessing contribution rather than on the "expected contributions" set forth in the CIP notice. IAF, Tab 17 at 19-22, Tab 21 at 9-12; PFR File, Tab 1 at 19-20. However, we find that the CIP notice set forth both the rubric and the expected contribution in each area. IAF, Tab 17 at 19-21. We therefore find nothing improper about the agency considering the rubric to determine whether the appellant made the contributions expected of her.

¶24     For the reasons explained in the initial decision, we agree with the administrative judge that the agency proved by substantial evidence that the appellant's contribution during the CIP period was unacceptable. ID at 25-29.

The appellant has not shown that the agency committed harmful procedural error.

¶25     The appellant argued below that the agency failed, in several respects, to follow the pertinent manual in administering her CIP. IAF, Tab 39 at 6-8. The administrative judge considered these arguments as both due process and harmful error claims, but he found that the appellant failed to prove them. ID at 36-38 & n.6. On review, the appellant disputes some of the administrative judge's findings.

¶26     The appellant argues that the decision to place her on a CIP was not made by a meeting of managers, as required by the manual. PFR File, Tab 1 at 20-21; IAF, Tab 18 at 11. She argues that evidence of this meeting was not presented to her until at the Board hearing and that the managers supposedly in attendance disagreed about the details of the meeting. Thus, she argues, the most logical conclusion is that the meeting never actually occurred. PFR File, Tabs 20-21. However, the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe*, 288 F.3d at 1301. We find that the appellant's arguments are insufficient to overcome the administrative judge's findings, based on in-person hearing

testimony that the pre-CIP meeting of managers was convened on March 29, 2016, as required. ID at 37. This is especially so in light of the appellant's May 25, 2016 email in which she acknowledges that this meeting did in fact occur. IAF, Tab 24 at 79. We therefore agree with the administrative judge that the appellant has not established that the agency committed any error concerning the managers' pre-CIP meeting. *See Parker v. Defense Logistics Agency*, 1 M.S.P.R. 505, 513 (1980) (finding that, to prove that the agency committed harmful procedural error, the appellant must show both that the agency committed procedural error and that the error was harmful).

¶27    The appellant also appears to allege that the agency committed harmful procedural error by not allowing her the full 90 days promised in the CIP notice to demonstrate acceptable contribution. PFR File, Tab 1 at 17. However, even assuming that the agency committed error by effectively shortening the CIP period, we find that the appellant has not shown it likely that she would have demonstrated acceptable contribution even with more time allotted. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681 (1991) (finding that, to show harmful error, an appellant must prove that any procedural errors by the agency prejudiced her substantive rights by possibly affecting the agency's decision; harmful error cannot be presumed).

¶28    The appellant further alleges that the agency committed numerous procedural errors leading up to the March 29, 2016 meeting of managers, including its failure to discuss expectations with her at the beginning of the appraisal cycle, failure to provide her an updated statement of duties and experience, and providing her feedback after the March 29 meeting that was inconsistent with her routine performance appraisals. PFR File, Tab 1 at 21-23. However, under 5 U.S.C. § 7701(c)(2)(A), an appellant must show "harmful error in the application of the agency's procedures in arriving at its decision." Thus, procedures unrelated to the processing of an appellant's removal cannot be challenged under the harmful error analysis. *Livingston v. Department of the Air*

*Force*, [26 M.S.P.R. 273](#), 275 (1985). The record of evidence does not support the appellant's claims that these errors occurred, and in any event, even if the agency did commit these procedural errors, as alleged, they cannot serve as a basis for an affirmative defense of harmful procedural error.

The appellant has not shown that she was removed in retaliation for protected activity.

¶29     The appellant alleged that her removal was in retaliation for four protected activities: (1) an equal employment opportunity (EEO) complaint that went to hearing in January 2016; (2) a May 26, 2016 complaint to the Office of Special Counsel (OSC); (3) a 2014 Equal Pay Act claim that was still ongoing during the relevant time period; and (4) a 2014 disclosure of physical intimidation by the Division Chief. IAF, Tab 39 at 17-18. The administrative judge found that some of the officials involved in the removal process were aware of at least some of this activity, but that none of it actually influenced the removal. ID at 30-36.

¶30     On review, the appellant argues that the administrative judge considered only her EEO complaint and did not address all her claims of retaliation for protected activity. PFR File, Tab 1 at 26-28. We disagree. Notwithstanding the heading in the initial decision under which he analyzed them, the administrative judge addressed all four of the appellant's alleged protected activities. ID at 29-36. The appellant also cites several facts in support of her contention that her removal was retaliatory, including that her OSC complaint was mentioned at the August 29, 2016 meeting of managers, all three officials at the meeting knew about her claim of physical intimidation, and these three officials plus the deciding official were all aware of her Equal Pay Act claim. PFR File, Tab 1 at 26-28. However, we find that these facts are not material to the outcome of this appeal because they go chiefly to whether the relevant officials knew of the appellant's protected activities, which as explained above, the administrative judge found they did. The administrative judge's finding that the appellant's removal was not an act of retaliation was based on explicit demeanor-based

credibility determinations and credible testimony by the officials involved that they did not consider the appellant's protected activities in deciding to remove her. ID at 33-36. Again, the appellant has not provided the Board a sufficiently sound reason to overturn these determinations. *See Haebe*, 288 F.3d at 1301.

¶31 In further support for her claims of retaliation, the appellant alleges that she was the only Program Officer who was not permitted to submit clarifications to the SAB. PFR File, Tab 1 at 25-26. However, as the administrative judge found, no other Program Officer's portfolio received such a negative review from the SAB. ID at 35. Therefore, we agree with the administrative judge that the agency had a legitimate basis to treat these other Program Officers differently. *Id.*

¶32 Finally, regarding the August 29, 2016 meeting of managers, the appellant asserts that the Division Chief and the Chief of the Physical and Biological Sciences Branch had the greatest motive to retaliate against her. She argues that these two officials strong-armed the Chief of the Engineering and Information Science Branch to go along with them in finding that she failed the CIP, and that it was the Division Chief's decision to recommend her removal. PFR File, Tab 1 at 28-30. We find that the appellant is misconstruing the evidence. First, as noted above, the Branch Chief did not state during the meeting that the appellant narrowed down her portfolio. *Supra* ¶ 19 n.10. Second, although the Branch Chief initially recommended a higher contribution score (3.5) for the problem-solving factor than was ultimately awarded (2.5), he also indicated at the outset of the meeting that the appellant's contribution in the other areas was not as strong.[11] IAF, Tab 7 at 83, Tab 39 at 55. This generally is reflected in the managers' final analysis of the appellant's CIP contribution. IAF, Tab 7 at 83-86. Furthermore, the very purpose of the meeting of managers is to ensure an

---

[11] We note that even a contribution score of 3.5 is well below what the appellant would have needed to achieve as a composite score in order to meet the expected contribution level of 4.3.

equitable rating process by broadening the input beyond that of the employees' individual supervisors. IAF, Tab 20 at 4. That the discussion this engendered resulted an agreement to rate the appellant lower on problem solving than the Branch Chief initially proposed is, at best, weak circumstantial evidence of retaliation. As for the decision to recommend removal, someone at the meeting had to be the first to raise the issue, and we do not find it surprising that it was the senior official present. IAF, Tab 39 at 69; HR 1 at 4:06:50 (testimony of the Management Analyst). We find no indication that the Branch Chiefs were reluctant to agree.

<u>The appellant has not shown that the administrative judge was biased.</u>

¶33        The appellant argues that the administrative judge, a former Air Force member, was biased based on his friendly banter with agency counsel, his allegedly self-deprecating comments about his role as an administrative judge, and his adjudication of two of the appellant's prior appeals. PFR File, Tab 1 at 30-32.

¶34        As an initial matter, a party should not wait until after adjudication is complete to attempt to disqualify an administrative judge. *E.g.*, *Gensburg v. Department of Veterans Affairs*, 85 M.S.P.R. 198, ¶ 7 (2000); 5 C.F.R. § 1201.42(b). The appellant was aware of all these alleged indicia of bias before the hearing's conclusion, yet she did not follow the Board's regulatory procedures for seeking the administrative judge's disqualification. *See* 5 C.F.R. § 1201.42(b)-(c).

¶35        Furthermore, we find that the appellant's allegations, even if true, are not sufficient to overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *See Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if his comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d. 1358,

1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Neither the administrative judge's former association with the agency, his friendly demeanor toward agency counsel, nor his alleged self-deprecating humor rise to that level. *See Madison v. Department of the Air Force*, 32 M.S.P.R. 465, 469 (1987); *Morris v. Department of the Air Force*, 24 M.S.P.R. 41, 43 (1984). Nor are the administrative judge's rulings against the appellant in other appeals sufficient to demonstrate bias. *See Caracciolo v. Department of the Treasury*, 105 M.S.P.R. 663, ¶ 14 (2007).

<u>The appeal must be remanded for further adjudication regarding the appellant's contribution during the period leading up to the CIP.</u>

¶36    On petition for review, the appellant argues that the agency was not justified in placing her on a CIP in the first place because her contribution leading up to the May 25, 2016 CIP was sufficient. PFR File, Tab 1 at 12-16, 22-25, 28. At the time the initial decision was issued, a longstanding line of Board cases held that an agency is not required in a chapter 43 appeal to prove that an appellant was performing unacceptably prior to a performance improvement plan (PIP). *E.g.*, *Wright v. Department of Labor*, 82 M.S.P.R. 186, ¶ 12 (1999). Consistent with that precedent, the administrative judge did not address the issue of whether the appellant was contributing inadequately prior to her CIP. However, during the pendency of the petition for review in this case, the United States Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that part of the agency's burden under 5 U.S.C. chapter 43 is to justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to that time.

¶37    Although the appeal in *Santos* involved a performance-based adverse action under a more traditional performance-based appraisal system, we find that the court's reasoning applies equally to the contribution-based adverse action at issue here. According to the documents implementing this demonstration project, when placing an employee on a CIP, the agency is required to inform her specifically of

how she is failing to make expected contributions, and afford her an opportunity to demonstrate a level of increased contribution. IAF, Tab 18 at 11-12, Tab 20 at 7. Furthermore, the agency's authority to place an employee on a CIP is explicitly predicated on the employee's contribution score falling below the expected range. IAF, Tab 20 at 7; *cf. Santos*, 990 F.3d at 1360-61 (examining similar statutory language to conclude that that an agency must justify institution of a PIP when an employee challenges a performance-based adverse action under chapter 43). The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Although the record in this appeal already contains some evidence suggesting that the appellant's contribution leading up to the CIP was unacceptable, IAF, Tab 17 at 18-19, Tab 23 at 19-20, Tab 24 at 26-67, we remand the appeal to give the parties the opportunity to present argument and additional evidence on the issue, *see Lee*, 2022 MSPB 11, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

¶38 The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate his prior findings on the other elements of the agency's case and the appellant's affirmative defenses in the remand initial decision. *See id.* However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-CIP performance affects the administrative judge's analysis of the other elements of the charge or the appellant's affirmative defenses, he should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's

conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

¶39    For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:              /s/ for

                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.